## THE NEPTUNO.

### SULLIVAN *v.* THE NEPTUNO, etc.

*(District Court, S. D. New York   April 4, 1887.)*

1. SEAMEN—PERSONAL INJURIES—DEFECTIVE TACKLE.
    A vessel and her owners are liable to seamen for injuries caused by the use of weak and dangerous tackle by the order of the ship's officers, after notice of its defects.
2. SAME—CASE STATED—RUPTURE.
    The libelant, a weakly lad of 18. was tending the sling in the hold while the end was unloading.   The iron hook, by which the tackle was attached to the yard above, broke, and the sling fell upon the libelant, injuring him severely; causing, as alleged, a rupture near each groin.   The hook broke in consequence of a flaw, which was indicated by its appearance, and was pointed out to the mate.   *Held,* that the vessel was liable; but, upon disputed evidence as to the lad's previous condition, $600 besides expenses was allowed.

In Admiralty.
*Jas. K. Hill, Wing & Shoudy,* and *H. Putnam,* for libelant.
*Sidney Chubb,* for claimant.

BROWN, J.  On the thirtieth of March, 1886, the British steamer Neptuno, being at the port of Graytown unloading cargo, the libelant, a youth 18 years old, was directed by the mate to tend the sling at the hatch between-decks.   While engaged in this work, a load of about 300 pounds, which had been hoisted by the tackle nearly up to the main-yard, fell upon him, and knocked him insensible.   On being picked up, his right forearm was found to be fractured, one of the bones of the right hand was broken, and a serious rupture disclosed in each groin.   I think the evidence shows that the captain offered him hospital treatment at Graytown, but the libelant preferred to come to New York with the ship.  When the steamer arrived here, on the sixteenth of April, he was still weak and disabled.   He could not turn his arm.   On the 20th, while the master's arrangements for procuring him admission to the Long Island hospital were still incomplete, the libelant being then ashore with the master, who was then actually engaged in perfecting those arrangements for admission, some friends took the libelant in charge, and obtained his entry into the same hospital on the 22d.   Under these circumstances, I cannot regard the libelant's conduct as amounting to desertion exonerating the ship.

The bones of the arm, being in very bad position, had to be refractured and reset.   The operation was entirely successful, and the libelant was discharged on the twenty-fourth of July with the free use of his arm.  He still suffers from the hernia.

The fall of the load arose from the breaking of the hook at the end of the tackle by which the sling was raised.   Some negligence of the winch-man and fellow-servant is suggested, in allowing the tackle to be carried too far.   The evidence, however, is not sufficient to allow the breaking

of the hook to be ascribed to that cause.    Several witnesses state that the hook, before it was used, was known to be imperfect; that it showed a plain flaw in the bottom of the curve, at the place where it broke; that, before it was used, the mate's attention was called to its insufficiency, and that he directed it to be used, saying that there was no other.    The mate has not been called as a witness, though apparently without any fault of the ship; and there is no contradiction of this testimony.    The break at the place of the visible flaw, under the comparatively light weight of 300 pounds, is clear proof of its total unfitness for such uses.    The vessel is therefore liable, not merely for the wages of the seaman, and the cost of the treatment in effecting his cure, so far as cure is possible, according to the usual maritime rule, (*City of Alexandria*, 17 Fed. Rep. 390;) but for the actual damage occasioned to the seaman through the negligence or tort of the ship, and of her owners, in not providing suitable and safe apparatus for unloading, and on account of the use of a weak and dangerous implement, after clear notice, by the direction of a superior officer, who for that purpose represents the owners.    *The Rheola*, 19 Fed. Rep. 926; *The Edith Godden*, 23 Fed. Rep. 43; 3 Desjardins, Droit Com. Mar. § 725, p. 298: Cour de Cass. May 31, 1886; *Alarion* v. *Valensi*, 2 Rev. Int. du Dr. Mar. 130.

The hospital charges, together with the truss furnished, amount to $104.    Aside from the hernia, the libelant seems to be now nearly as well as before the accident.    The chief difficulty is in determining whether the libelant had suffered any previous rupture.    The master and one passenger testify that soon after the injury, when severe rupture was visible on both sides, the libelant stated that that was an old matter. The libelant says that is incorrect; that he had no previous rupture whatever; and that he did not know at the time what that meant.    The rupture after the accident was such as to require the use of a truss immediately, which the captain procured.    His companions on board never saw any sign of rupture before, and it is certain that he used no truss before.    At the same time, it seems hardly possible that the master, and a passenger who is disinterested, should have been wholly misled as to the libelant's answers.    The only possible explanation is that the libelant did not understand the inquiries put to him in his then suffering condition.    On the other hand, he was a weakly lad: was shipped as a boy at 35 shillings per month; and he did no hard work.    Even if he was suffering from slight rupture before, it is certain that this accident very greatly aggravated it.

Under the circumstances of doubt that attend the case, and it appearing that but little was due to him for wages, I allow the sum of $104, above named, for hospital charges, and the sum of $600 for his injuries, for which a decree may be entered, with costs.