## THE LYNDHURST.

(District Court, E. D. New York. December 31, 1906.)

1. SEAMEN—PERSONAL INJURIES—LIABILITY OF VESSEL.
   Where a seaman was injured by the breaking of a runner passing through the eye of the rope by which the mizzen topgallant yard was hauled up, the fact that a storm had subjected the runner to a very unusual strain did not constitute a defense to the ship's liability for the seaman's injuries, in the absence of a showing that there had been an adequate inspection to determine the sufficiency of the runner thereafter.

   [Ed. Note.—For cases in point see Cent. Dig. vol. 43, Seamen, § 188; vol. 34, Master and Servant, § 211.]

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Where a sailor was injured by the breaking of a runner, while or immediately after he had ridden down the halyards, which was forbidden be-

cause it tended to put unnecessary strain on the runner, the seaman was guilty of negligence which contributed to his injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, § 189; **vol. 34**, Master and Servant, § 775.]

Abbott & Coyne, for libelant.
Convers & Kirlin, for claimant.

THOMAS, District Judge. The libelant was a sailor on the Lyndhurst. She had been inspected and overhauled at Wilmington and Philadelphia, and received A1 Lloyds approval before sailing; but when 50 days out, on a voyage to China, the runner passing through the eye of the rope, whereby the mizzen topgallant yard is hauled up, broke while the sail was being raised, and the block fell, hitting the libelant on the femur, just above the knee, breaking his leg. For this the libel is filed. The captain did not think libelant's leg was broken, and did not treat him for it, but did the best he could for him, and treated him with all consideration. The bone united; but, the fracture being oblique, the ends overrode each other somewhat, so that his leg is shortened an inch and a half or two inches. He undoubtedly suffered much pain.

The examination at the instance of the Lloyds related to exterior observation of the rigging, and did not otherwise tend to test the breaking strength of the runner. The evidence does not show how such ascertainment could have been made. After the voyage began, the runner, in connection with other similar parts, was under observation by the chief officer. He testified that it was apparently in good condition, that he examined the place where the runner broke after the accident, that it was a clean break, and that the ends were bright and free from rust. Reynolds, boatswain's mate of the Lyndhurst, states that he often had to do with the runner; that it was rusted before the accident, and was in unfit condition on account of appearance of rust; that he reported it before the accident to the chief officer. The chief officer denies such statement. The ship had been in service since 1886, and there is no evidence that there had been renewal of the runner during that time, or that its breaking strength had been tested. However, the runner was of the best make, and the fact of such long service is not inconsistent with its proper usefulness and strength. The claimant ascribes the weakening to such an extent that it broke to the unusual strain put upon it by bad weather shortly before the accident, but asserts that, in the absence of bad condition appearing outwardly, the fact of such strain could not be determined.

Did the runner exteriorly show conditions that should have prompted the claimant to closer examination? Neither the chief officer nor Reynolds were produced in court, and the question is, why should Reynolds and the libelant be believed, rather than the chief officer and others who had the runner under observation? The libelant is an interested witness, and Reynolds states that he was disposed to bring action for an injury received by himself on the ship before his discharge. On the whole, it would seem that, so far as the controversy between Reynolds and the chief officer is concerned, there is no suffi-

cient reason to prefer the statement of Reynolds. Therefore it is found that the latter did not give actual notice.

But the claimant's defense in part is that the storm had subjected the runner to very unusual strain. This very fact should have put the claimant to unusual investigation, and it is considered that adequate inspection was not had. But would such sufficient inspection have revealed the condition of the runner? The court cannot state what the inspection would have revealed. It may be that it would have disclosed evidence of breakage at the point of rupture. Is it a defense that there was no use of inspecting properly, because after the event the court cannot say from the evidence that it would have disclosed signs of weakness? There was no flaw in the runner at the place of the break. There may have been exterior indications that would have escaped cursory examination, and when a cable breaks in ordinary use, and it appears that there has been no adequate inspection after it has been subjected to extraordinary strain, the two facts raise a presumption of negligence that has not in this case been overcome.

But it appears that the libelant, at the time of the accident, was either riding down the halyards, or that he had just reached the deck and was standing on the boat skid, after doing so, while the yard was being hauled up by himself and several others. Riding down the halyards was forbidden, for it tends to put unnecessary strain on the runner, and certainly it would tend to overburden it. Hence the libelant contributed to the injury.

It is found that the ship was not negligent in failing to put into Cape Town.

The damages are fixed at $1,500, which, with the costs, will be divided.