### THE PORTLAND.

(District Court, D. Oregon. May 4, 1914.)

No. 6230.

SHIPPING (§ 84*)—LIABILITY OF VESSEL FOR INJURY TO STEVEDORE—DEFECTIVE APPLIANCE.

    A steamship *held* liable for an injury to a stevedore while stowing wheat in the hold by reason of the breaking of the rope sling furnished by the vessel and used to hoist the sacks of wheat on board, which had become frayed and weakened by use, and which it was the duty of the ship, delegated to the second mate, to inspect and keep in safe condition.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

In Admiralty. Suit by Fred Jones against the steamship Portland; the Nymo Line, Incorporated, claimant. Decree for libelant.

Giltner & Sewall, of Portland, Or., for libelant.

Snow & McCamant, of Portland, Or., for respondent and claimant.

WOLVERTON, District Judge. The libelant was injured while at work in the hold of the steamship Portland, by the falling upon him of sacks of wheat that were being taken aboard in slingloads by means of winches and appliances for hoisting the cargo from the wharf and lowering it into the hold of the ship. The winches were carrying a ton of wheat in sacks to the slingload, and the accident was caused by the parting of a rope which, being drawn about the sacks, held them together and operated as a sling for handling the wheat. The rope so used was an inch in diameter, or about three inches in circumference, and the evidence shows that it had been used for a time, had become somewhat worn, and to some extent frayed and attenuated, and undoubtedly weakened. A section of it was very perceptibly attenuated, so that by comparison with the other part its strength must have been materially lessened. The rope did not part at this section, however, but at another. The condition of the section where it parted could not, from the nature of things, be shown. Originally the sling was made up of a good, perhaps first, quality of rope used for the purpose.

The rope for constructing the slings was furnished in new bales by the vessel, and the slings were spliced and made up, under the direction of the second mate, usually while the vessel was on the voy-

---

age between ports, so as to have them in readiness for use in port. The second mate was also charged with the duty of inspecting the slings, to determine their strength and fitness for use. When in port the slings were furnished to the workmen in numbers somewhat be-· yond what was required for immediate use, so that the men to a limited extent had the choice between slings at hand for use in carrying the loads. In other words, there was a sufficient number of slings at hand so that, had they wished, the men might have selected another sling instead of the one that broke.

The crucial question in the case, and perhaps the only one, is what duty the ship owed to the libelant for his protection against accident and injury through the breaking of the sling.

Doubtless the sling is an appliance, and it was incumbent upon the ship to exercise due and reasonable care and precaution to furnish a safe appliance of the kind. It was furthermore incumbent upon the ship to use like care and precaution to keep the appliance in suitable repair for the use to which it was to be devoted. This includes the duty of making inspections, tests, and examinations at the proper intervals. Union Pacific Ry. Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597.

Nor can this duty be delegated to another so as to escape responsibility for its proper observance and discharge. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612.

Applied in admiralty. In re California Nav. & Imp. Co. (D. C.) 110 Fed. 670.

The second mate testifies that he had certain of the crew make up new slings while on the voyage to this port, and that he himself inspected the slings, both the new and those that had been used, and believed all to be safe for use. In this duty in making up the slings and of inspection, he acted in the stead of the ship, and was therefore vice principal, and the question is resolved into one whether he observed due and reasonable care in the discharge of this duty.

The fact that the rope broke is proof positive that it was defective and not suitable for use. This, coupled with the testimony adduced, which indicated that the sling had beome worn and frayed and attenuated, which condition would have become apparent to one making a careful inspection of the same, impels me to the conclusion that respondent was negligent contributing to the injury of the libelant. This conclusion is borne out by analogous cases. The Rheola (C. C.) 19 Fed. 926; Steel et al. v. McNeil, 60 Fed. 105, 8 C. C. A. 512; Wm. Johnson & Co. v. Johansen, 86 Fed. 886, 30 C. C. A. 675.

A suggestion is made that irregular operation of the winches caused the sling to break, but the evidence does not show that the winchmen were at fault.

As to the damages sustained, libelant has lost in time he was unable to work seven or eight months, during which he would have earned, considering his habit of not working the whole time, from $75 to $80 per month. The services of his physician will cost him $150. To this should be added compensation for the shock received and pain and suffering endured. I am not impressed that his injuries

are at all permanent. Indeed, it is probable that he is now able to perform work substantially as prior to the accident.

I award the libelant therefore $1,200 in gross as the amount of his damages.