## PAYNE v. JACKSONVILLE FORWARDING CO.

(District Court, S. D. Florida. April 6, 1922.)

No. 1295.

1. **Admiralty ☞66—Trial amendment, alleging negligence of fellow servant, allowed.**

An answer in libel for personal injuries may be admitted, after the testimony was taken, to allege that the negligence, if any, was that of a fellow servant, since such allegation would be material to a full presentation of respondent's case, if the negligent servant was a fellow servant, and, if he was not, the amendment would not affect the result.

2. **Seamen ☞29(5)—In suit for injury, evidence showing facts different from those on which negligence is based is admissible.**

Where the engineer of a steamship sought recovery for personal injuries, and alleged that the respondent tug owner was negligent in the manner of attempting to float the steamship, which had stranded, any evidence tending to show a state of facts different from that alleged in the libel on which the claim of negligence was based is pertinent and admissible.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Seamen ⬅29(1)—**Engineer of vessel, voluntarily assisting in carrying out orders of tugs, held servant of tug owner.**

Where the engineer of a vessel which had stranded was voluntarily assisting in carrying out an order given by the captain of the tug, in charge of the work of floating the vessel, when he was injured, he was, while so engaged, a servant of the owner of the tug, though he was employed and paid by the owner of the vessel, and owed no duty to assist in that operation.

4. Seamen ⬅29(3)—**Captain of tug held "fellow servant" of engineer of vessel carrying out captain's orders.**

The captain of a tug, in charge of the work of floating a stranded vessel, was not performing any of the duties imposed by law on his master in directing the placing of the towline and the movement of the tugs during the operation, and therefore was not a vice principal, but was a fellow servant of the engineer of the vessel, who was injured while carrying out the orders of the tug's captain.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fellow Servant.]

In Admiralty. Libel by Marion L. Payne against the Jacksonville Forwarding Company to recover for personal injuries. Libel dismissed.

A. H. & Roswell King and W. H. Harwick, all of Jacksonville, Fla., for libelant.

Marks, Marks & Holt, of Jacksonville, Fla., for respondent.

CALL, District Judge. On February 14, 1921, the libel was filed in personam for personal injuries. May 6th an amended libel was filed, in which it is alleged that on the 3d day of May, 1919, the libelant was on board the Harrish as chief engineer; said ship was aground in St. Johns river near the municipal docks of the city of Jacksonville; that respondent had full charge of operations to float said ship, and employed in said operations two tugboats, the St. John and Ruth E., pulling in tandem; that the tugboats surged upon the line, whereupon it parted, and a portion of it struck the libelant with great force, injuring him; and for damages from these injuries this libel was brought. The negligence alleged is: The manner in which the line was rigged; surging upon it while so rigged; failure to warn libelant of the intention to surge upon the line; and failure to parcel the line at the points of contact with the chocks, bitts, and capstan base.

The respondent answered May 10, 1921, admitting that libelant was aboard said ship as chief engineer; further alleging that he was in command of said ship; admits it had full charge of floating the steamship with two tugs in the manner mentioned in the libel. Article 6 of the answer avers that the line used in attempting to float the steamship was rigged as follows, and not otherwise: One end of the hawser was made fast to the municipal dock, then led through a stern chock on one side of the steamship; thence past a bitt, through a stern chock on the other side of the ship; thence to the stern of the St. John and made fast. The answer denies that the respondent placed said hawser against sharp angles, etc., of the base of the capstan or permitted said hawser to chafe; denies that it failed to warn the libelant that

the tugs would surge upon the line; avers that the libelant had full opportunity to know and should have known that the tugs would surge on the line; avers, further, that to surge on said line was proper and usual under the circumstances; admits the parting of the hawser and injury to libelant; avers libelant was guilty of negligence by placing himself and remaining too near said line, and failing to exercise the care for his safety required of a prudent person under the circumstances; denies negligence in not parceling the hawser, and the other acts of negligence alleged in the libel.

At the hearing application was made by respondent to amend its answer by inserting the words:

"And if any other negligence proximately contributed to said injury it was the negligence of a fellow servant, of which the libelant assumed the risk."

The last of the testimony was taken on the 10th of August, 1921, and transcribed and filed in the court on November 19, 1921, and the hearing had within a few days after, when the motion for amendment was made. Objections were made to allowance of the amendment, but I do not think such objections should be sustained.

[1] If Capt. Potter was a fellow servant, as contended by respondent, such amendment would be material to a full presentation of respondent's case. If he was not, such amendment would not in any manner affect the final disposition of the case. The amendment will therefore be allowed.

[2] There was a motion to strike certain evidence, and also objections to certain evidence. In regard to the motion to strike will say that the issue in the case is the negligent performance of the work in floating the ship; the acts of negligence being the way the hawser was rigged, the surging on the hawser in this condition, and the failure to warn libelant that the tugs would surge on the line, as well as the failure to parcel the line. Each of these acts of negligence was put in issue by the answer. Any evidence tending to show a state of facts different from that set up in the libel upon which the negligence is based is pertinent and admissible. The motion to strike will be denied.

A list of objections to evidence was also filed. Some of these I think are well taken. The objections reserved on pages 233, 234, 241, 292, 293, and 294 will be sustained. The others will be overruled. The undisputed facts of this case may be stated as follows:

The steamship Harrish, owned by the Shipping Board, was not in commission, had no crew aboard, and only a watchman in charge. The libelant was employed by the Shipping Board as a marine engineer to look after the machinery of this steamship and others owned by the Shipping Board not in condition. On May 2, 1919, the steamship was moved by tugs from her berth preparatory to taking her to the dry dock for repairs, and in such movement grounded on a sand bar some 300 feet from the municipal docks in the St. Johns river. Having failed on May 2d to float the ship from this sand bar, efforts were renewed on May 3d to float her by means of two tugs pulling in tandem, the line, a hawser nine inches in circumference, being fastened to the municipal dock, or some stationary object near thereto, carried aboard the steam-

ship on the starboard side through a chock near the stern, thence around or through the stern bitts on the starboard side, thence across the poop deck through the chock near the stern on the port side to one of the tugs, and made fast. That on that morning libelant had gotten up steam on said steamship at the request of the general manager of respondent, in order that the steam capstan might be used in the operation, if its use was deemed advisable in floating the ship. That while the libelant was assisting in placing a stop on the hawser leading to the municipal dock, the two tugs surged on the line, it parted, and a portion of the line struck libelant and injured him.

There are conflicts in the testimony as to how the line was run across the deck, its position on the starboard stern bitts, and whether any warning was given before the surge was signaled. The testimony is uncontradicted that the steamship was equipped with a Hyde steam capstan, engine inclosed in the base, and steam pipe leading from boiler room, by which steam was supplied to capstan engine and exhaust pipe. This steam pipe and engine cylinders projected from the capstan base forward; the pipes being higher than the base of the cylinder. The contention of libelant is that the hawser passed through the starboard stern chock, around the starboard stern bitts, aft of and around the base of the capstan, and out of the port stern chock; this arrangement placing the line against the corner of the capstan base at a considerable angle. Thus there was a bend in the line, and the negligence charged is thus running the line, and also surging upon the line by the two tugboats while thus rigged. The respondents, on the other hand, contend that the hawser was run forward of the capstan, then out through the stern chock, giving a straight lead to the line.

A large amount of testimony was taken upon this issue, and is conflicting; but, taking it altogether, the positions of the witnesses, their opportunities for observation, their interest or otherwise, I am of opinion that the libelant has sustained his contention of the way the line was run. The testimony of the expert witnesses establish that such an arrangement of the hawser was unseamanlike, and that, while such surging upon the line to float a stranded ship is the usual and ordinary method of procedure, yet that, with the line in such a position, such a proceeding should not be had, or, if it is done, warning should be given all parties engaged in the work before the order for surging is given, in order that they might seek places of safety, as it would be liable to part the line. The preponderance of the evidence is that no such warning was given.

From the testimony I find that it was not negligence not to parcel the line. As I understand the way the line was rigged, the line would move through the chocks and around the bitts, in the event the ship was moved by the tugs, and that parceling is only used when a rope is liable to chafe at a particular point.

Upon whether the doctrine of "fellow servant" applies in this case hinges the right of the libelant to recover. This question naturally divides itself into two considerations: First, was the libelant a servant of the respondent at the time he was hurt; and, second, if he was, was Capt. Potter a fellow servant or a vice principal.

[3] As to the first consideration, it appears without contradiction that libelant was employed to care for the machinery, etc., of the Shipping Board ships not in commission; that the respondent was engaged in getting the ship off the bank and that libelant was aboard that morning for the purpose of having up steam to work the capstan in case it was needed in the operation; that Hagan, one of the men engaged in the work, was ordered to put a stop line on the hawser leading to the municipal dock and was engaged in trying to do that service when libelant came from the engine room to warm up the capstan engine that it might be in condition to use; that, when libelant saw Hagan proceeding in a wrong manner to put on such stop line, he went to his assistance and while doing this act he was injured by the parting of the hawser; that Capt. Potter was in charge of the work of floating the ship and giving the orders to the tugs from the stern of the stranded ship.

The fact that libelant was employed by the Fleet Corporation is not the criterion alone, by which this question is to be decided. The true test is whether both, at the precise time of the accident, were working in a common employment, under the same general control and direction, no matter by whom their wages are eventually paid, or in whose general employment they may be. In the instant case it seems to me uncontrovertible that the libelant at the time of the accident was attempting to carry out the order theretofore given Hagan to put a stop line on the shore end of the hawser. The fact that he was voluntarily assisting in this particular work does not alter his status. It was no part of his duty to his employers to render such assistance to Hagan. The respondent owed no higher or greater duty to him than to others engaged in the work. So it seems clear to me that the libelant must be held to have been acting as the servant of the respondent at the time of his injury.

[4] As to the second consideration, whether Capt. Potter was a fellow servant, the facts are that Capt. Potter was in control of the work for the respondent, directing the placing of the line, the movement of the tugs and giving the signals controlling their movements. This as I understand the law, does not make him a vice principal or alter ego, making his negligence the negligence of the employer, thereby making it responsible for injuries resulting from such neglience.

"The solution of this question depends upon the implied obligation assumed by an employer to his servant. Unless there is a breach of that obligation there is no negligence. Briefly stated, this obligation is that the employer will not expose the servant to any unreasonable hazards, in view of the nature of the services to be performed. As to those things to be done by the employer personally he undertakes not to be negligent. As to those things which he is not to do personally, he undertakes to use due care to see that they are properly done, and as incidents of this obligation he is to use due care to provide safe appliances and facilities for the servant in the service to be performed, and to employ competent fellow servants to assist him, if fellow servants are required. Those things which are to be done by the employer personally are employer's duties, and, if he delegates them to others, he undertakes for their proper discharge precisely as though he personally were to discharge them." Quinn v. N. J. Lighterage Co. (C. C.) 23 Fed. 364.

One to whom these employer's duties are delegated, no matter what may be his designation, is a vice principal or alter ego and his negligence is the negligence of the employer.

In the instant case, the placing of the line, the giving of signals to the tug boats, whether the line should have been parceled to prevent chafing are all acts to be performed by employees and form no part of employers' duties. They are incidents of the work of floating the ship; temporary conditions occurring during the operation. I therefore find that Capt. Potter and the libelant at the time of the libelant's injury were fellow servants of the respondent engaged in the performance of a common undertaking.

Reference has been made to section 20, 38 Stat. 1185 (Comp. St. § 8337a), and the amendment thereto in 1920 (41 Stat. 1007, § 33) as controlling to some extent in this case. It is sufficient to say that the amendment to section 20 was approved in June, 1920, and this cause of action accrued in May of 1919, and cannot affect libelant's rights, even if said amendment had not by its very terms been applicable to actions at law. Section 20 of the act of 1915 does not apply to cases of this kind.

I therefore find for the respondent. The libel will be dismissed.