## MAHNICH *v.* SOUTHERN STEAMSHIP CO.

No. 200.   Argued January 5, 1944.—Decided January 31, 1944.

*Mr. Abraham E. Freedman,* with whom *Mr. Paul M. Goldstein* was on the brief, for petitioner.

*Mr. Joseph W. Henderson,* with whom *Mr. George M. Brodhead, Jr.* was on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Petitioner, a seaman on respondent's vessel, the "Wichita Falls," was injured, while at sea, by a fall from a staging, which gave way when a piece of defective rope supporting it parted. The rope was supplied by the mate when there was ample sound rope available for use in rigging the staging. The question is whether the defect in the staging was a breach of the warranty of seaworthiness rendering the owner liable to indemnify the seaman for his injury.

Petitioner brought this suit in personam in admiralty in the District Court for Eastern Pennsylvania, to recover indemnity and maintenance and cure. On the trial the evidence showed that the mate ordered petitioner to paint the bridge and to stand on the staging for that purpose. The staging consisted of a board supported at both ends by rope which, if sound, was sufficient in strength to sustain the stage and its load. The boatswain, by direction of the mate, had cut the rope for the staging from a coil, which had been stored for two years in the Lyle gun box. The rope, intended for use with the Lyle life-saving apparatus, had never been used. There was testimony that it had been examined and tested by the boatswain and the mate, and that it was generally sound in appearance. After the accident, examination of the rope at the point where it broke showed that it was so rotten as to be inadequate to support the strain imposed upon it.

The trial judge concluded from the evidence that there was sound rope on board available for rigging the staging. He found that there was no fault in the manner in which the stage had been rigged, but that the rope selected by the mate was defective and that petitioner's injury was attributable to the negligence of the boatswain and the

mate in failing to observe the defect.[1]  He held that the proceeding was brought too late to recover for the negligence under the Jones Act, and that the "Wichita Falls" was not unseaworthy by reason of the defective rope used in rigging the staging, citing *Plamals* v. *The Pinar Del Rio,* 277 U. S. 151, 155.  He accordingly denied indemnity to petitioner, but gave judgment in his favor for maintenance and cure.

The Court of Appeals for the Third Circuit affirmed, 129 F. 2d 857, 135 F. 2d 602, by a divided court, resting its decision on the statement quoted from the opinion in *The Pinar Del Rio, supra,* 155, that "The record does not support the suggestion that the 'Pinar Del Rio' was unseaworthy.  The mate selected a bad rope when good ones were available."  We granted certiorari, 320 U. S. 725, upon a petition which urged that the statement quoted from *The Pinar Del Rio, supra,* does not rule this case, and that the decision below is inconsistent with the decisions in *The Osceola,* 189 U. S. 158, and in *Socony-Vacuum Co.* v. *Smith,* 305 U. S. 424.

The sole issue presented by the petition for certiorari is that of respondent's liability to indemnify petitioner for the injury suffered by reason of the defective staging.  No question is raised with respect to petitioner's right to recover under the Jones Act or his right to the award of maintenance and cure or its adequacy.

A finding of seaworthiness is usually a finding of fact. *Luckenbach* v. *McCahan Sugar Co.,* 248 U. S. 139, 145; *Steel* v. *State Line S. S. Co.,* L. R. 3 A. C. 72, 81–82, 90–91. Ordinarily we do not, in admiralty, more than in other

---

[1] The dissenting judge in the Circuit Court of Appeals thought that this finding of negligence on the part of the ship's officers was erroneous.  See 135 F. 2d 602, 605.  There was no attack on this finding here, and we have not examined the correctness of the trial judge's conclusion, for, as we will point out, the question whether there was such negligence does not control decision of the issues of this case.

cases, review the concurrent findings of fact of two courts below. *The Carib Prince,* 170 U. S. 655, 658; *The Wildcroft,* 201 U. S. 378, 387; *Luckenbach* v. *McCahan Sugar Co., supra; Piedmont Coal Co.* v. *Seaboard Fisheries Co.,* 254 U. S. 1, 13; *Just* v. *Chambers,* 312 U. S. 383, 385. Here, however, both courts below, holding themselves bound by *The Pinar Del Rio, supra,* have, on the facts found, held as a matter of law that the staging was seaworthy despite its defect. That conclusion of law is reviewable here.

Until the enactment of the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, the maritime law afforded no remedy by way of indemnity beyond maintenance and cure, for the injury to a seaman caused by the mere negligence of a ship's officer or member of the crew. But the admiralty rule that the vessel and owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel or its appurtenant appliances and equipment, has been the settled law since this Court's ruling to that effect in *The Osceola, supra,* 175. *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 380–381; *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255, 258–260; *Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130, 134; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 370–371; *Warner* v. *Goltra,* 293 U. S. 155, 158; *The Arizona* v. *Anelich,* 298 U. S. 110, 120 *et seq.; Socony-Vacuum Co.* v. *Smith, supra,* 428–429; *O'Donnell* v. *Great Lakes Co.,* 318 U. S. 36, 40. The latter rule seems to have been derived from the seaman's privilege to abandon a ship improperly fitted out, and was generally applied, before its statement in *The Osceola, supra,* by numerous decisions of the lower federal courts during the last century. See *The Arizona* v. *Anelich, supra,* 121, footnote 2.

This was a recognized departure from the rule of the English law, which allowed no recovery other than maintenance and cure for injuries caused by unseaworthiness, *Couch* v. *Steel,* 3 El. & Bl. 402, until the enactment of the

Merchant Shipping Act of 1876, 39 & 40 Vict., Chap. 80, § 5, reenacted by the Merchant Shipping Act of 1894, 57 & 58 Vict., Chap. 60, § 458. By that statute there is annexed to every contract of service between the owner of a ship or the master and any seaman thereof, an obligation that all reasonable means be used to insure the seaworthiness of the ship before and during the voyage. See *Hedley* v. *Pinkney & Sons S. S. Co.*, [1894] A. C. 222.

In a number of cases in the federal courts, decided before *The Osceola, supra,* the right of the seaman to recover for injuries caused by unseaworthiness seems to have been rested on the negligent failure, usually by the seaman's officers or fellow seamen, to supply seaworthy appliances. *The Noddleburn,* 28 F. 855, aff'd, 30 F. 142; *The Neptuno,* 30 F. 925; *The Frank and Willie,* 45 F. 494; *The Julia Fowler,* 49 F. 277; *William Johnson & Co.* v. *Johansen,* 86 F. 886; and see *The Columbia,* 124 F. 745; *The Lyndhurst,* 149 F. 900. But later cases in this and other federal courts have followed the ruling of *The Osceola, supra,* that the exercise of due diligence does not relieve the owner of his obligation to the seaman to furnish adequate appliances.[2] *Carlisle Packing Co.* v. *Sandanger, supra,* 259–260; *The Arizona* v. *Anelich, supra,* 120 *et seq.; Beadle* v. *Spencer,* 298 U. S. 124, 128–129; *Socony-Vacuum Co.* v. *Smith, supra,* 428–429, 432; *The H. A. Scandrett,* 87 F. 2d 708, 710–711; cf. *The Edwin I. Morrison,* 153 U. S. 199, 210.

If the owner is liable for furnishing an unseaworthy appliance, even when he is not negligent, *a fortiori* his obligation is unaffected by the fact that the negligence of the officers of the vessel contributed to its unseaworthiness.

---

[2] By statute the owner's similar obligation with respect to the carriage of goods is merely to exercise "due diligence to make the . . . vessel in all respects seaworthy." Harter Act, § 3, 27 Stat. 445, 46 U. S. C. § 192. See also Carriage of Goods by Sea Act, § 4 (1), 49 Stat. 1210, 46 U. S. C. § 1304 (1).

It is true that before the Jones Act the owner was, in other respects, not responsible for injuries to a seaman caused by the negligence of officers or members of the crew. But this is not sufficient to insulate the owner from liability for their negligent failure to furnish seaworthy appliances, see Judge Addison Brown, in *The Frank and Willie, supra,* 495–497; *Carlisle Packing Co.* v. *Sandanger, supra,* 259–260, more than their negligence relieves him from his liability for maintenance and cure. *The Osceola, supra,* 175; *Pacific S. S. Co.* v. *Peterson, supra,* 134; *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 527.

It required the Harter Act to relax the exacting obligation to cargo of the owner's warranty of seaworthiness of ship and tackle.[3] That relaxation has not been extended, either by statute or by decision, to the like obligation of the owner to the seaman. The defense of the fellow servant rule to suits in admiralty for negligence, a defense precluded by the Jones Act, has never avowedly been deemed applicable to the owner's stricter obligation to the seaman of the warranty of seaworthiness.

*The Osceola, supra,* in answer to certified questions, laid down as separately numbered and independent propositions the rule of the owner's unqualified obligation to furnish seaworthy appliances, and the rule that the owner is not liable to a seaman for the negligence of his fellow servants. It nowhere intimated that the owner is relieved from liability for providing an unseaworthy appliance, merely because the unseaworthiness was attributable to the negligence of fellow servants of the injured seaman rather than to the negligence of the owner. Indeed, to support the rule of absolute liability, the Court, see *The Osceola, supra,* 173–175, relied on cases in which the vessel or its owner had been held liable for injuries resulting from unseaworthiness, although application of the fellow

---

[3] See note 2, *supra.*

servant rule would have barred recovery. Of one, *The Frank and Willie, supra,* the Court, after pointing out that the seaman was injured by reason of the negligent failure of the mate to provide a safe place in which to work, said, "the question was really one of unseaworthiness and not of negligence."

The Court cited, discussed and relied upon *The Noddleburn, supra, Olson* v. *Flavel,* 34 F. 477, *The Frank and Willie, supra,* and *The Julia Fowler, supra.* In each the seaman was injured as a result of his use of unseaworthy appliances rendered so by the negligence of a fellow servant. In *The Julia Fowler, supra,* the injury was caused by a fall from a boatswain's chair which the Court found, as in this case, was rigged with defective rope by reason of the fault of the mate. The inapplicability of the fellow servant rule to this type of case was recognized explicitly in *The Noddleburn, supra,* 858, and in *The Frank and Willie, supra,* 495–497. And such was our holding in *Carlisle Packing Co.* v. *Sandanger, supra,* where it was said, at p. 259, "without regard to negligence the vessel was unseaworthy." See also the discussion in *The H. A. Scandrett, supra,* 710–711.

In thus refusing to limit, by application of the fellow servant rule, the liability of the vessel and owner for unseaworthiness, this Court was but applying the familiar and then well established rule of non-maritime torts, that the employer's duty to furnish the employee with safe appliances and a safe place to work, is nondelegable and not qualified by the fellow servant rule. *Hough* v. *Railway Co.,* 100 U. S. 213, 216–220; *Northern Pacific R. Co.* v. *Herbert,* 116 U. S. 642, 647–648; *Baltimore & Ohio R. Co.* v. *Baugh,* 149 U. S. 368, 386–388; *Union Pacific Ry. Co.* v. *Daniels,* 152 U. S. 684, 688–689. It would be an anomaly if the fellow servant rule, discredited by the Jones Act as a defense in suits for negligence, were to be resuscitated and extended to suits founded on the warranty of

seaworthiness, so as to lower the standard of the owner's duty to furnish safe appliances below that of the land employer.

The staging from which petitioner fell was an appliance appurtenant to the ship. It was unseaworthy in the sense that it was inadequate for the purpose for which it was ordinarily used, because of the defective rope with which it was rigged. Its inadequacy rendered it unseaworthy, whether the mate's failure to observe the defect was negligent or unavoidable. Had it been adequate, petitioner would not have been injured and his injury was the proximate and immediate consequence of the unseaworthiness. See *The Osceola, supra,* 174–175, and cases cited. Any negligence of the mate in selecting the rope and ordering its use as a part of the staging, or of the boatswain in using it for that purpose, could not relieve respondent of the duty to furnish a seaworthy staging. Whether petitioner knew of the defective condition of the rope does not appear, but in any case the seaman, in the performance of his duties, is not deemed to assume the risk of unseaworthy appliances. *The Arizona* v. *Anelich, supra,* 123–124; *Beadle* v. *Spencer, supra,* 129–130; *Socony-Vacuum Co.* v. *Smith, supra.*

Nor does the fact that there was sound rope on board, which might have been used to rig a safe staging, afford an excuse to the owner for the failure to provide a safe one. We have often had occasion to emphasize the conditions of the seaman's employment, see *Socony-Vacuum Co.* v. *Smith, supra,* 430–431 and cases cited, which have been deemed to make him a ward of the admiralty and to place large responsibility for his safety on the owner. He is subject to the rigorous discipline of the sea, and all the conditions of his service constrain him to accept, without critical examination and without protest, working conditions and appliances as commanded by his superior officers. These conditions, which have generated the exacting re-

quirement that the vessel or the owner must provide the seaman with seaworthy appliances with which to do his work, likewise require that safe appliances be furnished when and where the work is to be done. For, as was said in *The Osceola, supra,* 175, the owner's obligation is "to supply and *keep in order* the proper appliances appurtenant to the ship." (Italics supplied.) It is not enough that the "Wichita Falls" had on board sound rope which could have been used to make the staging seaworthy, if in fact the staging was unsafe because sound rope was not used. *The Julia Fowler, supra; The Navarino,* 7 F. 2d 743, 746; cf. *The Portland,* 213 F. 699.

Respondent's argument that the defective rope was a consumable supply of the vessel, not falling within the requirement that the owner must furnish seaworthy equipment appurtenant to the vessel, is inappropriate here because, as we have said, it was the stage which was unseaworthy, by reason of the use of the defective rope in its construction. The stage was used in the repair of the ship, and was as intimately associated with it and with the seaman's employment as are the gangways or other appliances or the passageways used by the seaman in doing his work.

Moreover it would not be enough to say that this case concerns a consumable supply, for in *Carlisle Packing Co. v. Sandanger, supra,* the owner was held liable to a seaman for unseaworthiness, where a consumable supply of the ship was stored in such fashion as to render it dangerous to the seaman who used it. There gasoline had been negligently placed in a can marked "coal oil" and the seaman was burned by an explosion which resulted when he attempted to build a fire with the gasoline, which he had taken out of the can thinking it to be coal oil.

The statement from *The Pinar Del Rio, supra,* relied upon by the two courts below, could be taken to support

their decision, only on the assumption either that the presence of sound rope on the "Wichita Falls" afforded an excuse for the failure to provide a safe staging, or that antecedent negligence of the mate in directing the use of the defective rope relieved the owner from liability for furnishing the appliance thereby rendered unseaworthy. But as we have seen, neither assumption is tenable in the light of our decisions before and since *The Pinar Del Rio, supra.* So far as this statement supports these assumptions, it is disapproved. We cannot follow it, and also follow *The Osceola, supra,* the cases which it approved and *Carlisle Packing Co.* v. *Sandanger, supra.* We prefer to follow the latter as the more consonant with principle and authority.

*Reversed.*

Mr. Justice Roberts:

· I think the judgment is wrong. The case does not present a situation calling for liberalizing the maritime law in favor of seamen by abolishing the defense of a fellow seaman's negligence. Congress did that in 1920 (41 Stat. 1007). But it required actions in such situations to be brought within two years, which it subsequently extended to three years. The sole question is whether recovery should be permitted beyond the time when Congress said action must be instituted. I should say nothing further on this question save that the method of reaching the decision seems to me contrary to right exercise of the judicial function.

The petitioner has undoubtedly obtained care and cure to which, as a seaman, he was entitled irrespective of fault on the part of owner or master. He failed timely to avail himself of his right to sue under § 33 of the Jones Act. In an action under that statute the defense of the negligence of a fellow servant would not have been open to the respondent. In an effort to obtain damages, he brought

this action under the general maritime law. His recovery *vel non* under the unusual circumstances can be of little importance to others than himself and the respondent. But, in order to give him the demanded relief, the court resorts to nullification of an earlier decision, *Plamals* v. *Pinar Del Rio*, 277 U. S. 151, indistinguishable in fact and law, which has stood unquestioned for sixteen years, and applied principles settled years before in *The Osceola*, 189 U. S. 158.

The history of *Plamals* v. *Pinar Del Rio* is important. The libellant, a seaman on a British ship lying in United States waters, was ordered by a mate to repair a stack. A sling was used, for which the mate selected a piece of rope. The rope broke and the seaman was injured. He filed a libel *in rem* against the vessel. The owner gave bond and released the ship.

The libel, after reciting the facts, alleged that the injuries were due "to the fault or neglect of the said steamship or those in charge of her in that the said rope was old, worn and not suitable for use." The libel failed to refer to § 33 of the Jones Act, but, at the trial, the libellant's proctor stated that he relied upon it. The claimant in its answer asserted that the vessel was of British registry and, as the only redress open to the libellant was under the British Workmen's Compensation Law, the Admiralty Court should decline jurisdiction. The claimant amended its answer to deny liability on the ground that the ship was provided with proper tackle but, through the negligence of an officer, bad tackle was selected.

The District Court held that the British law,—the law of the flag,—afforded no action *in rem* nor any action for indemnity since there was an ample supply of good rope on board and the mate chose an insufficient rope for use.

On appeal the Circuit Court of Appeals held that the libellant's pleadings were inadequate but, as no point had

been made of their infirmity, went on to consider "whether, on the facts proven and under any applicable law, libellant has a case." [1]   It said the libellant must make out a case of maritime tort; that, under the law of England, there could be no recovery and that if the applicable law were the maritime law of the United States the libellant could not recover for the improvident or negligent act of the mate, adding: "If the vessel had been unsupplied with good and proper rope, a different question would arise."

That court further held that, although, under the Jones Act, libellant could have sued at law or filed a libel *in personam*, the statute gave no right to a libel *in rem*.   The decree dismissing the libel was, therefore, affirmed.

Petitioner sought review in this court and, in his petition and briefs, asserted the right to maintain a libel *in rem* under the Jones Act but, in the alternative, insisted that, under the general maritime law, independent of the Jones Act, the libellant was entitled to recover for the failure to supply, and keep in order, proper appliances, properly rigged, and for the unseaworthiness of the vessel in this respect.

It will be noted how closely that case parallels the instant one.   In both, though for differing reasons, the libellant was precluded from relying on the Jones Act which would have avoided all question of a fellow servant's negligence.   In both, the libellant then sought to resort to his claim for indemnity for a maritime tort.   In the *Pinar Del Rio* case it was held that he had made no case on the latter theory, and in the present case it is held that he has made out such a case.   This court, in the earlier case, held two things: first, that a libel *in rem* cannot be maintained under the Jones Act, and, second, that, if the case were treated as the Circuit Court of Appeals had treated it,—as one for

---

[1] 16 F. 2d 984, 985.

recovery of indemnity for a maritime tort,—the record would not support the claim. The court said:

*"The record does not support the suggestion that the 'Pinar Del Rio' was unseaworthy. The mate selected a bad rope when good ones were available.*

"We must treat the proceeding as one to enforce the liability prescribed by Sec. 33. It was so treated by petitioner's proctor at the original trial; and the application for certiorari here spoke of it as based upon that section. *The evidence would not support a recovery upon any other ground."* (Italics added.)

These holdings were made in answer to extended argument in the briefs, the petitioner on the one hand contending that the vessel should be treated as an American vessel and as being unseaworthy, respondent contending that, whether British or American, she was not unseaworthy under the law of either nation and that the libellant's injuries were due to the negligence of a fellow servant. What the court said, therefore, was clearly responsive to the contentions of the parties. The present decision does not merely disapprove language used in the earlier case. It overrules the case and alters long-established law without adequate reason.

There has been some suggestion that the holding in the *Pinar Del Rio* case to which I have referred crept into the opinion by inadvertence. But I cannot assume any such thing in view of the proverbial care which all the justices exercise to prevent expression of opinion on questions not necessary to the decision of a case. The decision must be taken at face value as the expression of the views of all the members of the court.

Cases now cited in the opinion of the court were cited and considered by the court in the *Pinar Del Rio* case.[2]

---

[2] *The Julia Fowler,* 49 F. 277; *The Noddleburn,* 28 F. 855; The *Osceola,* 189 U. S. 158; *The Navarino,* 7 F. 2d 743. *The Portland,* 213 F. 699, not cited, was, however, decided prior to this court's decision in the *Pinar Del Rio* case.

°The most important of them, and one on which the Circuit Court of Appeals relied in that case, was *The Osceola, supra.*[3] The instant decision not only overrules the *Pinar Del Rio* case but asserts that it is inconsistent with the holdings in *The Osceola.* If this be true it must be because the court has a different conception of the word consequence than that I have.

In *The Osceola* this court, after the fullest consideration, recapitulated the admiralty law respecting the rights of injured seamen, *inter alia,* as follows (p. 175):

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen *in consequence* of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. . . ." (Italics supplied.)

"That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure."

Unseaworthiness in the abstract does not afford a cause of action. An injury must be "in consequence" of the unseaworthiness,—must be connected with and result from it. And "unseaworthiness" covers a variety of situations variously affecting the work and risks of seamen. Unseaworthiness of the kind on which the court bases its opinion is very different from that due to a faulty mechanism which is an inherent risk to life and limb. If the doctrine now announced is right, a vessel supplied with the newest charts would be unseaworthy if the owner failed to remove old charts from the pilot house; it would make the owner an insurer that, no matter how

---

[3] *The Osceola* has long been recognized as a leading case. It has been cited for the propositions it laid down at least eighteen times by this court, and nearly two hundred times by lower federal courts.

many adequate facilities were at hand, no insufficient one was anywhere on the ship. Here the so-called unseaworthiness did not consist in want of adequate ropes for the seaman's need. His injury was due entirely to the negligent selection by the mate of a piece of bad rope when ample good rope was at hand. The District Court found that the mate was negligent, the Circuit Court of Appeals accepted the finding, and the disposition of the case in this court is on the assumption of the correctness of this finding.

The question, therefore, is whether the ship is liable for the mate's negligent choice of a defective piece of rope when there was plenty of good rope aboard. Under the principles announced in *The Osceola*, recovery in admiralty for a maritime tort is barred by the mate's negligence. It was to avoid the interposition of such a defense of a fellow servant's act that the Jones Act made the Federal Employers' Liability Act applicable to the claims of injured seamen.

The court professes to have to choose between the doctrine it reads into the decision in *The Osceola* case and the ruling in *Pinar Del Rio*. But further it asserts that *Pinar Del Rio* is in conflict with *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255, an opinion written by the same justice who wrote the opinion in the *Pinar Del Rio* case. The cited authority, as I read it, clearly ruled that in order for a seaman to recover for an injury where the ship is unseaworthy the unseaworthiness must be the direct cause of his injury.

That was an action brought in a state court by an injured seaman against the owner of a motor boat. When the boat left on her voyage a can intended for the use of the crew, supposed to contain coal oil, and so labeled, had been filled with gasoline and the seaman, without notice of this fact, attempted to use the contents and was

burned. The supply of life preservers was insufficient and his injuries were aggravated by his having to search for one before he could jump overboard and extinguish the flames consuming his clothing. A verdict and judgment for the seaman was sustained. This court found that erroneous instructions had been given the jury but held the error harmless since the record showed that, without regard to the owner's negligence, the vessel was unseaworthy when she left the dock, and the court held (p. 259): ". . . if thus unseaworthy and one of the crew received damage *as the direct result thereof*, he was entitled to recover compensatory damages." (Italics supplied.) The court cited, amongst other cases, *The Osceola.*

I am at a loss to understand the citation of this case as authority for the present decision. The reasoning of the court's opinion seems to be this: In the *Carlisle Packing Co.* case recovery was permitted because the injury was the direct result of unseaworthiness. That decision, therefore, requires that the owner be held liable in the instant case although the seaman's injury was not the direct result of unseaworthiness, but of the mate's negligence. It must be upon the basis of such reasoning that the *Pinar Del Rio* case is overruled and the judgment below reversed.

There is some suggestion that the *Pinar Del Rio* case was overruled by *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424. It need only be said that the *Pinar Del Rio* case was not cited in the briefs of counsel in the *Socony* case nor referred to in the opinion and that in fact the *Socony* decision involved and purported to deal only with the general doctrine of assumption of risk and not with the defense of fellow servant's negligence. That the defenses are not the same is made plain by the fact that it has always been held that a fellow servant's negligence is no defense in actions brought under the Federal Em-

ployers' Liability Act,[4] whereas assumption of other risks was a defense [5] until Congress recently explicitly acted to abolish it as such.[6]

Indeed, if in the *Socony* case, the suit had involved a fellow servant's negligence instead of the seaman's assumption of the risk involved in the use of an unsafe appliance supplied by the vessel, the case would have been so plainly ruled by earlier decisions [7] that it would have merited no consideration, much less an opinion, by this court.

The statement in the opinion that the defense of a fellow servant's negligence had never been deemed applicable to the owner's obligation to the seaman under the warranty of seaworthiness ignores the point that if the seaman is to recover the unseaworthiness must, under the authorities cited, be the direct cause of the injury. If it is not, but a fellow servant's negligence is the cause, the seaman could not recover,[8] until the law was altered by the Jones Act.

The evil resulting from overruling earlier considered decisions must be evident. In the present case, the court below naturally felt bound to follow and apply the law as clearly announced by this court. If litigants and lower federal courts are not to do so, the law becomes not a chart to govern conduct but a game of chance; instead of settling rights and liabilities it unsettles them. Counsel and

---

[4] *Illinois Central R. Co.* v. *Skaggs*, 240 U. S. 66.

[5] *Seaboard Air Line* v. *Horton*, 233 U. S. 492.

[6] Act of Aug. 11, 1939, 53 Stat. 1404.

[7] *Jamison* v. *Encarnacion*, 281 U. S. 635; *Uravic* v. *Jarka Co.*, 282 U. S. 234.

[8] *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *The Rosalie Mahony*, 218 F. 695; *In re Tonawanda Iron & Steel Co.*, 234 F. 198; *Payne* v. *Jacksonville Forwarding Co.*, 280 F. 150; *The Daisy*, 282 F. 261; *Wood* v. *Davis*, 290 F. 1; *Hammond Lumber Co.* v. *Sandin*, 17 F. 2d 760; Benedict, Admiralty, 6 Ed., Vol. 1, p. 256.

parties will bring and prosecute actions in the teeth of the decisions that such actions are not maintainable on the not improbable chance that the asserted rule will be thrown overboard. Defendants will not know whether to litigate or to settle for they will have no assurance that a declared rule will be followed. But the more deplorable consequence will inevitably be that the administration of justice will fall into disrepute. Respect for tribunals must fall when the bar and the public come to understand that nothing that has been said in prior adjudication has force in a current controversy.

Of course the law may grow to meet changing conditions. I do not advocate slavish adherence to authority where new conditions require new rules of conduct. But this is not such a case. The tendency to disregard precedents in the decision of cases like the present has become so strong in this court of late as, in my view, to shake confidence in the consistency of decision and leave the courts below on an uncharted sea of doubt and difficulty without any confidence that what was said yesterday will hold good tomorrow, unless indeed a modern instance grows into a custom of members of this court to make public announcement of a change of views and to indicate that they will change their votes on the same question when another case comes before the court.[9] This might, to some extent, obviate the predicament in which the lower courts, the bar, and the public find themselves.

MR. JUSTICE FRANKFURTER joins in this opinion.

---

[9] See *Minersville School District* v. *Gobitis,* 310 U. S. 586; *Jones* v. *Opelika,* 316 U. S. 584, 623; *Barnette* v. *West Virginia State Board of Education,* 47 F. Supp. 251, 252–3; *West Virginia State Board of Education* v. *Barnette,* 319 U. S. 624.