## YARBROUGH
### v.
### AMERICAN MAIL LINE,
Limited, et al.
No. 15329.

United States District Court
S. D. California, Central Division.
March 25, 1954.

Herbert Resner and Irving I. Bass, Los Angeles, Cal., for libelant.

Lasher B. Gallagher, Robert Sikes and John R. Allport, Los Angeles, Cal., for respondents.

YANKWICH, Chief Judge.

The libelant, a seaman, has brought a libel *in personam* for damages, wages, maintenance and cure alleged to be due him for injuries received on January 31, 1953 while employed as a seaman on the vessel M–V Island Mail owned by the respondent, American Mail Lines, Ltd. In addition to general damages in the sum of $20,000.00 for injuries caused by the unseaworthiness of the vessel and failure of the owner to furnish a safe place to work, the libelant seeks to recover for loss of wages for the period between March 20, 1953 and June 22, 1953 in the amount of $1,545.00, and maintenance at the rate of $8.00 per day for the same period, or a total of $752.00. The respondent has denied liability.

The facts relating to the accident which caused the injury, testified to at the trial, are not in dispute. The heel block on the No. 1 port boom was frozen in an improper position because of rust and corrosion. While the libelant was working as a maintenance man near hatch No. 1, the heel block became loose,

was lowered precipitately, and hit the libelant on the back of his head, forcing him to the deck in a sitting position. The impact caused a one-half inch gash on the back of his head which was treated on the ship by a member of the crew and later, on the same day, by a doctor when the ship docked at Yokohama Harbor, Japan. The accident having been caused by faulty equipment under the control of the respondent ship-owner, there is liability for the consequential injury whether we call it unseaworthiness or failure to furnish a safe place to work. 46 U.S.C.A. § 688; Mahnich v. Southern S. S. Co., 1944, 321 U.S. 96, 99–101, 64 S.Ct. 455, 88 L.Ed. 561; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 93–95, 66 S.Ct. 872, 90 L.Ed. 1099; Crawford v. Pope & Talbot, 3 Cir., 1953, 206 F.2d 784, 788–789; Petterson v. Alaska S. S. Co., 9 Cir., 1953, 205 F.2d 478, 480.

■ The problem in the case, as stated by the Court at the conclusion of the argument, is the extent of the injury and of the consequent disability. A study of the medical testimony,—consisting of the records of the United States Public Health Service at San Pedro, California, *introduced by the libelant,* and of the records of the Los Angeles County General Hospital, where the libelant received treatment in April 1953, *introduced by the respondent,* the testimony by deposition of a physician, Dr. Frederick Hardy of Seattle, Washington, who, at the request of the ship's local agent, examined him, after the ship reached Seattle, on March 25, 1953, and of Dr. William R. Malony, Jr., an orthopedic surgeon, who examined him at the request of the respondent early in 1954 and who testified at the trial,—leads to the conclusion that at the end of the voyage, on March 20, 1953, the libelant *was not* suffering from the consequences of the injury received on January 31, 1953.

There was no depression or any permanent scarring of the head where the libelant had been hit, and no discernable neurological or other symptoms traceable to the injury. The contrary conclusions by a chiropractor who had treated the libelant and who sought to attribute to the accident certain spinal deformities claimed by her to be present are not supported by the clinical data, or the examinations and the Roentgenograms of physicians dealing with problems which are beyond the competence of a chiropractor. Indeed, the main symptoms which the chiropractor diagnosed as caused by a distortion of the spine which she claimed were helped by manipulation, *headaches and vomiting,* were caused, according to all medical testimony and the libelant's own statement to physicians by a spinal tap which he had undergone. The records of the Los Angeles County General Hospital also reflect the history given by the libelant that the taps *always resulted in the symptoms complained of.* The libelant had a history of cured syphilis. So there is no basis for a finding that the libelant was unable, as he claims, to follow his occupation as a seaman from March 20, 1953 to June 22, 1953, the period for which he claims loss of wages and maintenance or that his future earning capacity as a seaman or otherwise will be affected by the injury.

However, the evidence does show that he was injured while in the employ of the respondent, under circumstances which, as already stated, make the respondent liable, and that from the day of the injury to the end of the voyage he suffered pain. His superiors recognized this by assigning him "light" maintenance work.

■ In sum, although there is no showing of permanent injury or injury which has continued *beyond* the 20th day of March, 1953, the libelant is entitled to recover general damages to compensate him for the pain, distress and discomfort suffered during the period from January 31, 1953 to March 20, 1953. The Court is of the view that the amount of $500 is adequate for the purpose. Judgment will, therefore, be for the libelant in the said sum, and costs. Findings and decree to be prepared by counsel for the libelant under Local Rule 7.