Nicholas **MANIATIS**, Libellant,

v.

**THE** Steamship **ARCHIPELAGO**, her engines, etc., in rem, and Penedo Cia Naviera, S. A., etc., in personam, Respondents.

No. 7804.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 10, 1959.

Sidney H. Kelsey, Peter K. Babalas, Norfolk, Va., for libellant.

Seawell, McCoy, Winston & Dalton, John W. Winston, Norfolk, Va., for respondent.

**WALTER E. HOFFMAN**, District Judge.

The original opinion of this Court is reported in 159 F.Supp. 245. On appeal the case was at first reversed and re-manded for further proceedings with instructions to reaffirm the judgment if this Court found that the accident was caused by deficient equipment amounting to unseaworthiness, but to dismiss the case if the accident was due to the negligence of a fellow member of the crew. Penedo Cia Naviera, S. A. v. Maniatis, 4 Cir., 262 F.2d 284.

When the matter was initially heard in this Court, proctors conceded that the case was not governed by the statutory law of the United States, but by the general maritime law prevailing in Liberia, the vessel flying the flag of that country.

The Court of Appeals rejected the theory that the doctrine of unseaworthiness now encompasses the negligent operation of seaworthy equipment (operating negligence), as well as defects in the structure of the ship and its appliances.

Following the reversal on January 5, 1959, a rehearing was granted on application of Maniatis because the decision in Markakis v. The Liberian Mparmpa Christos, D.C.S.D.N.Y., 161 F.Supp. 487, interpreted the Liberian law as permitting a cause of action grounded upon negligence of a fellow servant. At the argument on rehearing a conflicting decision was called to the attention of the Court of Appeals. Konstantopoulos v. Diamente Cia De Vapores, S. A., D.C.S.D. N.Y., 170 F.Supp. 662, 667. By order dated June 17, 1959, the prior judgment of this Court was vacated, and the case remanded for a new trial with an opportunity being afforded to produce evidence as to the existence and interpretation of Liberian law, as well as further evidence, if desired by either party, as to the cause of the accident.

In this posture of the case, proctors have agreed that the matter be determined on the evidence heretofore submitted, together with the deposition of C. A. Cassell, a former Attorney General of Liberia,[1] as to the interpretation of the laws of Liberia.

4. The same witness testified as an expert in Konstantopoulos v. Diamente Cia De Vapores, S.A., D.C., 170 F.Supp. 662, 667.

64

We do not reach the point of interpreting the Liberian law. It is clear from the prior opinion of this Court that, under the authority of the comment from Gilmore and Black, The Law of Admiralty, p. 320, § 6–39, which was rejected by the Court of Appeals, the trial court was not required to analyze the evidence for the purpose of supporting libellant's right of recovery under unseaworthiness or negligence. As this Court erroneously suggested, it was either "unseaworthiness as known prior to Mahnich [Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561], or operating negligence equivalent to unseaworthiness as stated in Mahnich, or both."

■■ The preponderance of the evidence justifies a finding that either the wire or the drumhead was unseaworthy. When the winch is in operation and the wire is taken in, the wire builds up on one side or the other of the drumhead and then ultimately slides down toward the center under tension. In this case, however, the winch had stopped and the crewman holding the wire stated emphatically that the wire was being tightly held when it slipped on the drumhead. Respondent's expert concedes that the wire is not intended to drop if tightly held. He states that, if recently painted, rusty, or in a state of not having been used for a few days, it is possible that the wire may slide. True, the expert testified that the probable cause of the wire slipping was the action of the crewman in permitting the line to become slack, but in the light of the positive testimony of the crewman holding the wire and the winch operator, the force of the expert's suggestion is weakened. Both crewmen stated that the wire would occasionally slip even though tightly held. While there is evidence to the effect that the winch was in proper operating condition, we are not so much concerned with the winch as we are with the drumhead or wire. On this subject there is very little said. In the teeth of the affirmative testimony as to the manner in which the wire was held, the logical conclusion is that rust or nonuse of the drumhead or wire was a proximate cause of the wire sliding, thus resulting in the boom falling upon libellant's finger. This is, in the eyes of the law, unseaworthiness.

So much of this Court's prior opinion which is not in conflict with what is herein stated, or with the opinion of the Court of Appeals, is adopted, along with this opinion, in lieu of specific findings of fact and conclusions of law in accordance with General Admiralty Rule 46½, 28 U.S.C.A., and proctors for libellant will prepare a decree granting libellant a judgment for the amount previously awarded in the order of March 17, 1958 (subject to any credit by way of payment made in the interim), plus interest from the date of the entry of the order to be entered.

Costs are awarded to libellant, but the costs on the appeal heretofore heard shall be deducted from the aggregate sum due libellant pursuant to the mandate of the Court of Appeals.