Mabel GILLESPIE, Administratrix of the Estate of Daniel E. Gillespie, Deceased, Plaintiff-Appellant,

v.

UNITED STATES STEEL CORPORATION, a corporation, Defendant-Appellee.

Mabel GILLESPIE, Administratrix of the Estate of Daniel E. Gillespie, Deceased, and Guardian of Mary Jane Gillespie, an incompetent, and Louis Eugene Gillespie, Roberta G. Keiser, and Rosanna G. Harvey, Petitioners,

v.

Honorable Paul JONES, Judge of the United States District Court for the Northern District of Ohio, Respondent.

Nos. 15383, 15389.

United States Court of Appeals Sixth Circuit.

July 29, 1963.

Jack G. Day and Bernard A. Berkman, Cleveland, Ohio, for appellant in No. 15383 and petitioners in No. 15389.

Robert B. Preston; Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for appellee in No. 15383 and respondent in No. 15389.

Before WEICK and O'SULLIVAN, Circuit Judges and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Appellant, Mabel Gillespie, Administratrix of the Estate of Daniel E. Gillespie, Deceased, filed her complaint

against the United States Steel Corporation, as defendant, in the District Court, for the recovery of damages arising out of the death of her decedent, who was a seaman and a member of the crew of one of appellee's steamers, engaged in transportation, as a cargo carrier, on the Great Lakes. The complaint alleged a cause of action based upon three separate grounds: (1) Title 46 U.S.C.A. § 688 (the Jones Act); (2) the general maritime law (unseaworthiness); and (3) the Ohio Wrongful Death Act.

Appellee filed a motion requesting the District Court to strike from the complaint the allegations relating to the general maritime law doctrine of unseaworthiness, and the allegations relating to the Ohio Wrongful Death Act, for the reason that the appellant's right to recover for the death of her decedent was based exclusively on the Jones Act. Briefs were filed in support of the motion and in opposition thereto. The District Court entered an order granting appellee's motion to strike. From this order, appellant prosecuted an appeal. Appellee filed a motion in this court for an order dismissing the appeal on the ground that the order of the District Court is not a final appealable order and, therefore, that the appeal was premature.

Before the motion to dismiss the appeal was heard by this court, appellant, Mabel Gillespie, filed a petition in this court for extraordinary relief, including a petition for a writ of mandamus, injunction, or other appropriate writ to be issued to the District Court commanding it to vacate the order striking from the complaint the allegations relating to the general maritime law doctrine of unseaworthiness, and the allegations relating to the Ohio Wrongful Death Act; and further commanding the District Court either to enter an order denying the motion to strike, or, in the alternative, granting the motion, and incorporating therein the requisite written statement to render appealable the said order within the provisions of Title 28 U.S.C.A. § 1292(b). This petition for extraordinary relief was filed not only by Mabel Gillespie as administratrix, but as guardian of Mary Jane Gillespie, an incompetent; and she was joined in the petition by Louis Eugene Gillespie, Roberta G. Keiser, and Rosanna G. Harvey. Mabel Gillespie is the mother of decedent, and the other named petitioners are his brothers and sisters.

The party who initiated the suit, that is, plaintiff-appellant, and the parties who initiated the petition for extraordinary remedy, that is, plaintiff-appellant and petitioners, seeking relief from a single order of the District Court, submit that they will be content if this court reaches the merits of the controversy, by either means, and strongly urge such a decision at this time. For this purpose, they moved to consolidate these appellate matters; and an order granting such motion for consolidation has been granted.[1]

The order of the District Court striking the allegations relating to unseaworthiness under the general maritime

1. In their brief, the so-called initiating parties state:

"The unnecessary expense in time and money, the duplication of effort, the frustration of being required to await the verdict in a trial in which one is not a participant and the piecemeal litigation compelled in the trial court, all as a result of appellate inaction now, are self-evident. Add to this the procedural morass involved in the refusal of the lower court to permit alternate claims under the general maritime law as a basis for liability in the wrongful death and conscious pain and suffering counts for those who yet remain in the suit.

Consider also the practical possibility that once it has been determined that the questioned beneficiaries are either in or out of this lawsuit it will be easier for counsel on both sides to evaluate the cases for settlement purposes and the necessity for any trial at all may be eliminated. It is readily apparent that appellate intervention at this stage is vital to the parties and will involve less stress upon the judicial machinery than appellate inertia at this stage of the proceedings.

"If this court should consider the controversy on its merits and determine that the order of the court below was erroneous in any respect, that court may be ordered

law and the Ohio Wrongful Death Act, if interlocutory, is not an appealable order. Title 28 U.S.C.A. § 1292 confers jurisdiction upon this court to hear appeals in certain instances where interlocutory orders or decrees are involved; but the order of the District Court in this case, which, it is to be said, is not an order in a proceeding in admiralty, does not come within any of the statutory classifications in which this court has jurisdiction of an appeal in an interlocutory decision.[2]

It is true that according to the statute, as appears in the margin, where a district judge enters an interlocutory order in a civil action, otherwise not appealable, and is of opinion that such order involves a controlling principle of law, as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation, he shall so state in writing in such order, and the Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made

to it within ten days after entry of the order. In the instant case, however, the District Court made no such order as above provided, and this Court did not permit such appeal.

It appears that, on its face, the order of the District Court, striking the allegations from the complaint is not a final order, but an interlocutory order, and not appealable; and the cases cited by appellee sustain the foregoing proposition. Lewis v. E. I. Du Pont De Nemours & Company, Inc., 183 F.2d 29, 21 A.L.R.2d 757 (C.A. 5); Cox v. Graves, Knight & Graves, Inc., 55 F.2d 217 (C.C.A. 4). An order striking a portion of the pleadings is not a final order. Markham v. Kasper, et al., 152 F.2d 270 (C.A. 7); Libbey-Owens-Ford Glass Co. v. Sylvania Indust. Corp., 154 F.2d 814 (C.A. 2); Stewart v. Shanahan, 277 F.2d 233 (C.A. 8).

However, counsel for appellant persuasively argues that the order of the District Court is not an interlocutory order, but a final order, because of these reasons: the order, striking the allega-

---

to conform its order to the appellate ruling, the problems listed above will be eliminated, and the matter may proceed to trial in orderly fashion.

"On the other hand, should this court determine that, on the merits, the order of the court below should be affirmed, a multiplicity of suits involving the same subject matter will have been avoided and the suit in the district court may proceed, this highly important issue having been completely resolved in advance of trial."

2. Title 28 U.S.C.A., § 1292 provides:
"Interlocutory decisions
"(a) The courts of appeals shall have jurisdiction of appeals from:
"(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;
"(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accom-

plish the purposes thereof, such as directing sales or other disposals of property;
"(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed;
"(4) Judgments in civil actions for patent infringement which are final except for accounting.
"(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

tions in question, entirely eliminated decedent's dependent brothers and sisters as beneficiaries in the wrongful death action based upon unseaworthiness; it removed from the wrongful death count of decedent's mother, the alternate theory of unseaworthiness; and it further removed any right to recover damages for conscious pain and suffering of decedent on the alternate theory of liability for unseaworthiness.

The difficulties of determining what a "final" appealable order is, are ably discussed by counsel for appellant in his brief, which embraces the argument that, even in cases where interim orders are called final, they may be really interlocutory, but have been held appealable solely because of hardship; that where an interim order adversely affects substantial rights which cannot be adequately protected by a subsequent appeal, the hardship rule will be invoked to make such an order final and appealable; and that the provision for appeal only from final decisions should not be so constructed as to deny effective review of a claim fairly severable from the context of a larger litigious process. Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299; Pabellon v. Grace Line, 191 F.2d 169, 179 (C.A. 2); Holdsworth v. United States, 179 F.2d 933 (C.A. 1); Forgay v. Conrad, 6 How. 201, 12 L.Ed. 404; Craighead v. Wilson, 18 How. 199, 15 L.Ed. 332; United States Alkali Export Ass'n v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554; Cohen v. Beneficial Ind. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206.

The question whether the order of the District Court is an appealable or nonappealable order is a close one. We would, at this time, in the interest of the due and proper administration of justice, prefer to decide the appeal on the merits, if that be possible; and we think it is. Plaintiff-appellant and petitioners ask for a disposition on the merits at this time, and agree to submit the controversy for such a determination; and, while in the regular course, the record, printed indices, and briefs would be filed, and the case placed upon the calendar for argument, we shall proceed to a determination on the merits, since our decision will not prejudice the rights of appellee defendant and respondent, who have not entered a consent to such a disposition.

We are, accordingly, of the view that, in the light of the motion, petition, and arguments advanced in the briefs, it is proper here to consider and pass upon the contention made by plaintiff-appellant and petitioners that the District Court erred in its order striking from the complaint the allegations basing the cause of action upon the general maritime law of unseaworthiness, and also striking the allegations basing the cause of action on the provisions of the Ohio Wrongful Death Act, leaving the plaintiff only the right to proceed under the Jones Act.

We proceed then to discuss the rights to which plaintiff-appellant and appellees are entitled under the Jones Act; whether they have any remedies under the general maritime law, and the Ohio Wrongful Death Act; whether the hardship rule applies as to interlocutory orders; and whether the motion to dismiss the appeal should be granted or denied.

We start first with the Jones Act. Prior to the Jones Act, 46 U.S.C.A. § 688, there was no liability for wrongful death under the general maritime law. That law gave no right to recover indemnity for the death of a seaman, although occasioned by the unseaworthiness of the vessel, or by negligence, and conferred no right whatever upon his personal representatives to recover damages. Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686.

The Jones Act gave a right of action to the personal representatives to recover damages. for and on behalf of designated

beneficiaries, for the death of a seaman when caused by negligence. It provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The effect of the Jones Act was to incorporate into the maritime law the statute applying to injuries to, and death of railway employees engaged in interstate commerce, known as the Federal Employers' Liability Act, Title 45 U.S. C.A. § 51, which provides:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Before proceeding to the other issues in the case, we shall dispose of the claim made for damages resulting from injuries to decedent causing conscious pain, suffering, and mental anguish prior to his death. The complaint alleges: "As plaintiff's decedent reached for the ladder to board the vessel, his feet slipped on the wet ore and wet surface of the dock, he lost his balance, fell into the Black River at the National Tube Dock and drowned"; that "[by] reason of the above described occurrence, plaintiff's decedent suffered personal injuries which caused him excruciating pain and mental anguish prior to his death. * * *" Assuming, at this point, that a right of action were to pass to decedent's relatives under the Ohio Wrongful Death Act, it would seem that there would be no substantial basis, in this case, for a separate estimate of pain and suffering.[3]

---

3. In The Corsair, 145 U.S. 335, 348, 12 S.Ct. 949, 952, 36 L.Ed. 727, the court said:

"We do not find it necessary to express an opinion whether a libel *in rem* will lie for injuries suffered by the deceased before her death, a right of action for which passes to the immediate relatives, under the Louisiana statute, since there is no proper averment in the libel to show that such damages were suffered.

It is true that the seventh paragraph alleges that from the time the 'tug struck the bank of the river to the time she sunk,' (about ten minutes,) 'and the said Ella Barton was drowned, she, said Ella Barton, suffered great mental and physical pains and shock, and endured the tortures and agonies of death.' But there is no averment from which we can gather that these pains and sufferings were not substantially cotemporaneous

■ Prior to the Jones Act, the general maritime law afforded no remedy by way of indemnity beyond maintenance and cure for the injury to a seaman caused by the mere negligence of a ship's officer or a member of the crew. Nevertheless, the admiralty rule that the vessel and owner were liable to indemnify a seaman for injury caused by the unseaworthiness of the vessel or its appurtenant appliances had been the settled rule long before the enactment of the Jones Act. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. By the Jones Act, therefore, Congress created a new cause of action, not then known to maritime law, for bodily injuries to a seaman, or for his death, caused by the negligence of any of the officers, agents, or employees of the ship. Thus, an injured seaman may bring an action claiming damages under the Jones Act for negligence, and, under the general maritime law, for unseaworthiness. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272. This, obviously, comes about because, prior to the Jones Act an injured seaman had a federal right in admiralty for an injury caused by unseaworthiness; and to this was added the new cause of action for negligence under the Jones Act.

Appellant, in the District Court, contended that she had the right to maintain an action for damages for the wrongful death of her decedent, a seaman, by reason of the unseaworthiness of the ship, under the general maritime law, as well as for negligence under the Jones Act. In reply, appellee submitted that the right of recovery for wrongful death given by the Jones Act is exclusive and precludes a right of recovery of indemnity for the death of a seaman by reason of the unseaworthiness of the vessel.

■ In considering these contentions, we refer to the origin and development of the remedy for unseaworthiness. It is a doctrine judicially, rather than legislatively, created; and in The State of Maryland, 85 F.2d 944, 945 (C.A.4), Judge John J. Parker summarized the history of the remedy.[4]

In Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 544, 80 S.Ct. 926, 930, 4 L.Ed.

---

with her death and inseparable as matter of law from it. Kearney v. Boston & Worcester Railroad, 9 Cush. 108; Hollenbeck v. Berkshire Railroad Co., 9 Cush. 478; Kennedy v. Standard Sugar Refinery, 125 Mass. 90; Moran v. Hollings, 125 Mass. 93. Had she suffered bodily wounds and bruises, from the result of which she lingered and ultimately died, it is possible that her sufferings during her illness would give a separate cause of action; but the very fact that she died by drowning indicates that her sufferings must have been brief, and, in law, a mere incident to her death. Her fright for a few minutes is too unsubstantial a basis for a separate estimation of damages."

4. In the cited case, Judge Parker said: ·
"Seamen are the wards of admiralty, and the policy of the maritime law has ever been to see that they are accorded proper protection by the vessels on which they serve. In early days, this protection was sufficiently accorded by the enforcement of the right of 'maintenance and cure.' Vessels and their appliances were of comparatively simple construction, and seamen were in quite as good position ordinarily to judge of the seaworthiness of a vessel as were her owners. * * *
"With the advent of steam navigation, however, it was realized, at least in this country, that 'maintenance and cure' did not afford to injured seamen, adequate compensation in all cases for injuries sustained. Vessels were no longer the simple sailing ships, of whose seaworthiness the sailor was an adequate judge, but were full of complicated and dangerous machinery, the operation of which required the use of many and varied appliances and a high degree of technical knowledge. The seaworthiness of the vessel could be ascertained only upon an examination of this machinery and appliances by skilled experts. It was accordingly held that the duty of the vessel and her owners to the seaman, in this new age of navigation, extended beyond mere 'maintenance and cure,' which had been sufficient in the simple age of sailing ships; that the owners owed to the seamen the duty of furnishing a seaworthy vessel and safe and proper appliances in good order and condition; and that for failure to discharge such duty there was liability on the part of the vessel and her owners to a

2d 941, Mr. Justice Stewart defined the doctrine of unseaworthiness, bringing it down to its latest development, in a notable opinion, in which, speaking for the court, he said: "The earliest mention of unseaworthiness in American judicial opinions appears in cases in which mariners were suing for their wages. They were required to prove the unseaworthiness of the vessel to excuse their desertion or misconduct which otherwise would result in a forfeiture of their right to wages. See Dixon v. The Cyrus, 7 Fed. Cas. 755, No. 3,930; Rice v. The Polly & Kitty, 20 Fed.Cas. 666, No. 11,754; The Moslem, 17 Fed.Cas. 894, No. 9,875. The other route through which the concept of unseaworthiness found its way into the maritime law was via the rules covering marine insurance and the carriage of goods by sea. The Caledonia, 157 U.S. 124 [15 S.Ct. 537, 39 L.Ed. 644]; The Silvia, 171 U.S. 462 [19 S.Ct. 7, 43 L.Ed. 241]; The Southwark, 191 U.S. 1 [24 S.Ct. 1, 48 L.Ed. 65]; I Parsons on Marine Insurance (1868) 367–400.

"Not until the late nineteenth century did there develop in American admiralty courts the doctrine that seamen had a right to recover for personal injuries beyond maintenance and cure. During that period it became generally accepted that a shipowner was liable to a mariner injured in the service of a ship as a consequence of the owner's failure to exercise due diligence. * * *

"This was the historical background behind Mr. Justice Brown's much quoted second proposition in The Osceola, 189 U.S. 158, 175 [,23 S.Ct. 483, 47 L.Ed. 760]: 'That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to

supply and keep in order the proper appliances appurtenant to the ship.' In support of this proposition the Court's opinion noted that '[i]t will be observed in these cases that a departure has been made from the Continental codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. This departure originated in England in the Merchants' Shipping Act of 1876 * * * and in this country, in a general consensus of opinion among the Circuit and District Courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own.' 189 U.S., at 175 [23 S.Ct. at 487] * * *.

"In 1944 this Court decided Mahnich v. Southern S. S. Co., 321 U.S. 96 [,64 S.Ct. 455, 88 L.Ed. 561]. While it is possible to take a narrow view of the precise holding in that case, the fact is that Mahnich stands as a landmark in the development of admiralty law. Chief Justice Stone's opinion in that case gave an unqualified stamp of solid authority to the view that The Osceola was correctly to be understood as holding that the duty to provide a seaworthy ship depends not at all upon the negligence of the shipowner or his agents. Moreover, the dissent in Mahnich accepted this reading of The Osceola and claimed no more than that the injury in Mahnich was not properly attributable to unseaworthiness. See 321 U.S., at 105–113 [, 64 S.Ct. at 460–463].

"In Seas Shipping Co. v. Sieracki, 328 U.S. 85, [66 S.Ct. 872, 90 L.Ed. 1099] the Court effectively scotched any doubts that might have lingered after Mahnich

seaman suffering injury as a result thereof. The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. In the Edith Godden (D.C.) 23 F. 43, 46, which dealt with the case of a seaman injured by a defective derrick, Judge Addison Brown pointed out that in dealing with injuries sustained by the use of modern appliances

'it is more reasonable and equitable to apply the analogies of the municipal law in regard to the obligation of owners and masters, rather than to extend the limited rule of responsibility under the ancient maritime law to these new, modern conditions, for which those limitations were never designed.' "

as to the nature of the shipowner's duty to provide a seaworthy vessel. The character of the duty, said the Court, is 'absolute.' 'It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy.' 328 U.S., at 94–95 [,66 S.Ct. at 877]. The dissenting opinion agreed as to the nature of the shipowner's duty. '[D]ue diligence of the owner,' it said, 'does not relieve him from this obligation.' 328 U.S., at 104 [66 S.Ct. at 822].

"From that day to this, the decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care. * * *

"There is ample room for argument, in the light of history, as to how the law of unseaworthiness should have or could have developed. Such theories might be made to fill a volume of logic. But, in view of the decisions in this Court over the last 15 years, we can find no room for argument as to what the law is. What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence. To hold otherwise now would be to erase more than just a page of history"

However, all of the foregoing is concerned with damages growing out of a claim of unseaworthiness resulting in *injuries* to a seaman, rather than indemnity for his *death* resulting from unseaworthiness, or, —in the case of The Tungus—for the death of a person who was not a seaman, and therefore, not under the Jones Act; and the foregoing

adjudications are here referred to because of the contention in the District Court that the rule relating to the unseaworthiness of a vessel, resulting in injuries to a seaman, should also apply in case of his death resulting from such unseaworthiness.

While, prior to the Jones Act, a vessel and owner were liable to indemnify a seaman for injuries caused by unseaworthiness, nevertheless, before the passage of that Act, the vessel and owner were not, under federal or maritime law, liable for the *death* of a seaman occasioned by unseaworthiness and negligence. Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. Long before the Lindgren case, in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, it was held that, in the absence of an act of Congress or a statute of a State giving a right of action therefor, a suit in admiralty cannot be maintained in the courts of the United States to recover damages for the death of a human being on the high seas, or on waters navigable from the sea, which is caused by negligence.

This seems a somewhat harsh rule for the Admiralty to apply to its wards, of which it is customarily said it has such tender and protective feeling; and Mr. Justice Brennan in his opinion, partly dissenting and partly concurring, in The Tungus v. Skovgaard, 358 U.S. 588, 599, 79 S.Ct. 503, 510, 3 L.Ed.2d 524, commented upon the holding of The Harrisburg, supra, saying that it was based largely on an application of the harsh common-law principle, and that, in the absence of an appropriate statute, there was no civil remedy for wrongful death. Nevertheless, he declared that "*the holding has become part and parcel of our maritime jurisprudence.*[5] But its harshness was averted by the practice in admiralty of drawing on the state wrongful death statutes to furnish remedies

---

5. Prior to The Tungus v. Skovgaard, supra, Mr. Justice Brennan had occasion to outline the basis of liability for unseaworthiness in Kernan v. American Dredging Co., 355 U.S. 426, 428, 78 S.Ct.

394, 396, 2 L.Ed.2d 382, involving the Jones Act, in which he stated:

"[The] remedy for unseaworthiness derives from the general maritime law, and that law recognizes no cause of ac-

for federal maritime torts." (Emphasis supplied.) In The Tungus case, supra, the decedent was not a seaman, but an employee of an oil company, working on the ship; and his death did not occur on the high seas, thereby excluding the Death on the High Seas Act, if that statute had otherwise been applicable. It was held in The Tungus case that a claim for unseaworthiness was encompassed by the New Jersey Wrongful Death Act, which could be applied by a court in admiralty; and it was pointed out by Mr. Justice Stewart, speaking for the court: "Although Congress has enacted legislation, notably the Jones Act and the Death on the High Seas Act, providing for wrongful death actions in a limited number of situations, *no federal statute is applicable to the present case.*" (Emphasis supplied.) The Court accordingly applied the New Jersey wrongful death statute and concluded that a claim for unseaworthiness, because of the negligent failure on the part of the ship and owner to provide plaintiff's decedent with a reasonably safe place to work, was encompassed by the New Jersey Wrongful Death Act, which gave a right of action for "death by wrongful act." Mr. Justice Stewart, however, during the course of his opinion in The Tungus case, stated: "We begin as did the Court of Appeals with the established principle of maritime law that in the absence of a statute there is no action for wrongful

tion for wrongful death whether occasioned [7 S.Ct. 140, 30 L.Ed. 358] by unseaworthiness or by negligence. The Harrisburg, 119 U.S. 199; see Western Fuel Co. v. Garcia, 257 U.S. 233, 240 [42 S.Ct. 89, 66 L.Ed. 210]. Before the Jones Act, federal courts of admiralty resorted to the various state death acts to give a remedy for wrongful death. The Hamilton, 207 U.S. 398 [28 S.Ct. 133, 52 L.Ed. 264]; The Transfer No. 4 [2 Cir.] 61 F. 364; see Western Fuel Co. v. Garcia, supra, [257] at 242, 42 S.Ct. at 90; Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479 [43 S.Ct. 418, 67 L. Ed. 756]. The Jones Act created a federal right of action for the wrongful death of a seaman based on the statutory action under the Federal Employers' Liability Act. In Lindgren v. United States, 281 U.S. 38 [50 S.Ct. 207, 74 L.Ed. 686] the Court held that the Jones Act remedy for wrongful death was exclusive and precluded any remedy for wrongful death within territorial waters, based on unseaworthiness, whether derived from federal or state law. The petitioner assumes that under today's general maritime law the personal representative of a deceased seaman may elect, as the seaman himself may elect, between an action based on the FELA and an action, recognized in The Osceola, 189 U.S. 158, 175 [23 S.Ct. 483, 47 L.Ed. 760] based upon unseaworthiness. In view of the disposition we are making of this case, we need not consider the soundness of this assumption. * * *

"In denying the claim the lower courts relied upon their views of general tort doctrine. It is true that at common law the liability of the master to his servant was founded wholly on tort rules of general applicability and the master was granted the effective defenses of assumption of risk and contributory negligence. This limited liability derived from a public policy, designed to give maximum freedom to infant industrial enterprises, 'to insulate the employer as much as possible from bearing the "human overhead" which is an inevitable part of the cost —to someone—of the doing of industrialized business.' Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 59 [63 S.Ct. 444, 87 L.Ed. 610]. But it came to be recognized that, whatever the rights and duties among persons generally, the industrial employer had a special responsibility toward his workers, who were daily exposed to the risks of the business and who were largely helpless to provide adequately for their own safety. Therefore, as industry and commerce became sufficiently strong to bear the burden, the law, the reflection of an evolving public policy, came to favor compensation of employees and their dependents for the losses occasioned by the inevitable deaths and injuries of industrial employment, thus shifting to industry the 'human overhead' of doing business. For most industries this change has been embodied in Workmen's Compensation Acts. In the railroad and shipping industries, however, the FELA and Jones Act provide the framework for determining liability for industrial accidents."

death. The Harrisburg, 119 U.S. 199 [7 S.Ct. 140, 30 L.Ed. 358]." (358 U.S. p. 590, 79 S.Ct. p. 505)

 What the Jones Act established was a modification of the prior maritime law, and a new rule of general application in reference to the liability of owners of vessels for injuries to seamen; it superseded all state legislation on that subject; and the right of action given by the Jones Act to the personal representative to recover damages *for and on behalf of designated beneficiaries* for the death of a seaman when caused by negligence, is exclusive, and precludes a right of recovery of indemnity for the death by reason of the unseaworthiness of the vessel, irrespective of negligence, notwithstanding that right might be predicated upon the death statute of the State in which the injury was received. Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686.

 While any seaman who shall suffer personal injury in the course of his employ may, at his election, maintain actions under the maritime law to recover for personal injuries occasioned by the unseaworthiness of the vessel, and under the Jones Act, for injuries caused by negligence, nevertheless, the personal representative of a deceased seaman had no right of action under the prior maritime law; and therefore, the right of action given a personal representative, under the Jones Act, to recover damages for the seaman's death when caused by negligence, for and on behalf of designated beneficiaries, is necessarily exclusive and precludes the right of recovery of indemnity for his death by reason of the unseaworthiness of the vessel.[6] It is clear that, so long as Congress had not exercised the power given it under the commerce clause of the Constitution with respect to the liability in such cases, the states might occupy the field; but as soon as Congress acted, the legislation of the states was superseded, and that of Congress became supreme and exclusive. Congress, having exercised the power given to it under the commerce clause of the Constitution, by enacting the Jones Act, covering fully the right of the personal representative of a seaman to recover from an employer for injury resulting in death, thereby superseded all state legislation bearing upon the subject. United States v. Lindgren, 28 F.2d 725 (C.A.4).[7]

In Turcich v. Liberty Corp., 119 F. Supp. 7, 11 (E.D.Pa.), in an order denying a new trial, the District Court discussed unseaworthiness occasioned by negligence as well as the absolute duty to see that the vessel was seaworthy, for the breach of which, without regard to negligence, the injured seaman might recover, since the general maritime law makes the owners liable for such losses.

---

**6.** It is to be noted that an injured seaman cannot be required to exercise an election between his remedies for negligence under the Jones Act and for unseaworthiness. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 222, 78 S.Ct. 1201, 2 L.Ed.2d 1272.

**7.** See The Minnesota Rate Cases, 230 U.S. 352, 408, 409, 33 S.Ct. 729, 744, 57 L.Ed. 1511, in which Mr. Justice Hughes, speaking for the Court, said:
"Interstate carriers, in the absence of Federal statute providing a different rule, are answerable according to the law of the State for nonfeasance or misfeasance within its limits. * * * Until the enactment by Congress of the act of April 22, 1908, c. 149, 35 Stat. 65, the laws of the States determined the liability of interstate carriers by railroad for injuries received by their employés while engaged in interstate commerce, and this was because Congress, although empowered to regulate the subject, had not acted thereon. In some States the so-called fellow-servant rule obtained; in others, it had been abrogated; and it remained for Congress, in this respect and in other matters specified in the statute, to establish a uniform rule."
See also Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086, defining and giving instances as to how far the general maritime law may be changed or affected by state legislation. In Kibadeaux v. Standard Dredging Co., 81 F.2d 670, 672 (C.A.5), Judge Sibley referred to these instances as "vexing distinctions."

But the court went on to say that the doctrine of unseaworthiness as announced by the Supreme Court, related only to the seaman's own right to recover for personal injuries occasioned by the unseaworthiness of the vessel, and conferred no right whatever upon his personal representative to recover indemnity for his death; and that, until the Jones Act, there was no Federal right of action for the wrongful death of a seaman caused by negligence. The court, however, pointed out:

> "The gist or gravamen of an action under the Jones Act is negligence. In order to maintain an action under the Act, the seaman or his personal representative must allege and prove negligence, for unless the seaman or his personal representative can establish negligence of the owners of the vessel or her officers, agents or employees, no liability exists. The negligence of the owners of the vessel may consist in the failure to supply and maintain a seaworthy vessel, properly equipped and manned or the negligence of the master or members of the crew, as provided in the Act."

■ The survival provisions of the Jones Act apply to an action brought by the personal representative of a deceased seaman, whose death was occasioned by a shipowner's negligent failure to comply with the absolute duty to furnish a seaworthy vessel. Fall, Adm'x v. Esso Standard Oil Company, 297 F.2d 411, 417 (C.A.5). Moreover, in Kernan, Adm'r v. American Dredging Company, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382, the court held that, under the Jones Act, which incorporates the provisions of the Federal Employers' Liability Act, a seaman's employer was liable, without a showing of negligence, for his death resulting from a violation of the Coast Guard regulations pertaining to navigation. In arriving at this conclusion, the court referred to the fact that its decisions under the Federal Employers' Liability Act, based upon violations of the Safety Appliance Act or the Boiler Inspection Act, established that a violation of either Act created liability without regard to negligence, if the violation, in fact, contributed to the death or injury, irrespective of whether the injury flowing from the breach was the injury which the statute sought to prevent; and that the Jones Act expressly provided for seamen the cause of action—and consequently the entire judicially developed doctrine of liability—granted to railroad workers under the Federal Employers' Liability Act.

Plaintiff-appellant submits that the statement of the court in Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686, that the personal representative of a deceased seaman could not, under the general maritime law, recover indemnity for the death of a seaman, was only dicta; and appellant refers to the remark of Mr. Justice Brennan in The Tungus v. Skovgaard, 358 U.S. 588, 606, 79 S.Ct. 503, 3 L.Ed.2d 524, in his opinion, concurring in part, and dissenting in part, in which he says that the opinion in Lindgren v. United States, supra, "dealt primarily with the effect of the Jones Act's wrongful death provision in removing the seaman's right to invoke the remedies of state Death Acts for the identical gravamen of negligence. And, although the libel did not allege unseaworthiness, the Court briefly observed that the Jones Act's death provision would be construed equally as foreclosing a state statute's use on that count." It is true that the libel in the Lindgren case did not allege unseaworthiness; but the matter was there before the court, since decedent left no survivors entitled to maintain an action under the Jones Act, and counsel for the administrator urged, in the language of the opinion of the court, "that the right of action given the personal representative by the Merchant Marine Act is not exclusive, and that it neither supersedes the right of action given him by the death statute of the State in which the injury was sustained, nor precludes his right to recover indemnity for the death under the old admiralty rules on the ground that the in-

juries were occasioned by the unseaworthiness of the vessel." The court said, however: "These contentions cannot be sustained."

■ It does not appear that the language in the Lindgren case, referred to by counsel for appellant, was dicta, for the reason that the matter was before the court, in the Lindgren case; was argued before the court; and was passed upon by the court. Moreover, the Supreme Court in The Tungus case, supra, declared that it was an established principle of maritime law that, "in the absence of a statute there was no action for wrongful death" (358 U.S. p. 590, 79 S. Ct. p. 505); and in Kernan v. American Dredging Company, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382, the court said that the remedy for unseaworthiness derives from the general maritime law, and that law recognizes no cause of action for wrongful death, whether occasioned by unseaworthiness or by negligence. (355 U.S. p. 428, 78 S.Ct. p. 396) The Court of Appeals for the Fifth Circuit on this point observed: "We feel compelled to hold that the general maritime law, unaided by the Jones Act, anomalously, archaically, unnecessarily in terms of general principles, gives (plaintiff) no right of action." Fall, Adm'x v. Esso Standard Oil Co., 5 Cir., 297 F.2d 411, 417.

■ We are of the view that the right of plaintiff-appellant rests solely on the Jones Act. As administratrix of the deceased seaman, she would have had no right of action for negligence, or under the general maritime law for unseaworthiness, resulting in his death, prior to the Jones Act. That statute gave an action for damages for death resulting from negligence,[8] and the damages were limited to the deceased employee's "personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if

none, then of the next of kin dependent upon such employee * * *." As Judge John J. Parker said in United States v. Lindgren, 4 Cir., 28 F.2d 725, 727: "The statute which was thus incorporated into the maritime law, and which conferred upon the injured seaman, or his representative, if his injury resulted in death, rights which might be enforced either in an action at law or a suit in admiralty, clearly provides that there can be a recovery in case of death only where there is a showing of dependency. * * * And, in the light of the authorities cited above, we think that the statute must be deemed exclusive and to supersede all state legislation bearing upon the subject."

Counsel for plaintiff-appellant argues that the rule in Lindgren v. United States, supra, is to be disregarded on the ground that it has become eroded, overrun by the decided cases in contiguous areas, and that the Supreme Court has already indicated that it will determine in the future that an action will lie for the wrongful death of a seaman caused by unseaworthiness, without regard to the Jones Act. To buttress this contention, counsel refers to Kernan v. American Dredging Co., 355 U.S. 426, 429–430, 78 S.Ct. 394, 397, 2 L.Ed.2d 382, where the court, speaking through Mr. Justice Brennan, said:

> "The petitioner assumes that *under today's general maritime law* the personal representative of a deceased seaman may elect, as the seaman himself may elect, between an action based on the FELA and an action, recognized in The Osceola, 189 U.S. 158, 175, [23 S.Ct. 483, 47 L. Ed. 760] based upon unseaworthiness. *In view of the disposition we are making of this case, we need not consider the soundness of this assumption.*" (Emphasis supplied.)

■ It is submitted that the foregoing indicates that the court may now be

---

8. It is to be emphasized that the Jones Act gives an action for damages for death resulting from negligence as well as for death, without regard to negligence,

where a violation of statutes or regulations contributes to the death. Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382.

considering the reversal of the rule that the personal representative of a deceased seaman is limited to damages under the Jones Act, and that he may, in the future, bring an action based upon unseaworthiness under the general maritime law. See Schlichter v. Port Arthur Towing Co., 288 F.2d 801, 806 (C.A.5); see also Mr. Justice Brennan's opinion, dissenting in part and concurring in part, in The Tungus v. Skovgaard, 358 U.S. 588, 597, 611, 79 S.Ct. 503, 3 L.Ed.2d 524, to which reference was made in Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720. However, if the prior rule is no longer accepted by the Supreme Court, and Lindgren v. United States, supra, is to be overruled, the landmarks must be plainer to see; and it would be unbecoming for this Court to base its determination upon the assumption that the holding in Lindgren is to be reversed. It has been said that The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L. Ed. 358, "was decided long before the cause of action for unseaworthiness reached its present mature state, recognized as being federal in its origin and incidents." Justice Brennan's opinion, dissenting in part, and concurring in part in The Tungus v. Skovgaard, 358 U.S. 588, 605, 79 S.Ct. 503. In the same case, Mr. Justice Brennan also said: "Admiralty law is primarily judge-made law. The federal courts have a most extensive

responsibility of fashioning rules of substantive law in maritime cases." (358 U.S. p. 611, 79 S.Ct. p. 516)[9] But he added that the holding that, in the absence of an appropriate statute, there was no civil remedy for wrongful death, *"has become part and parcel of our maritime jurisprudence."* (Emphasis supplied.) This, it is to be remarked, was subsequent to the Kernan case, upon which plaintiff-appellant places such store. In Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941, Mr. Justice Frankfurter, in the course of a dissenting opinion, remarked: "No area of federal law is judge-made at its source to such an extent as is the law of admiralty"; and in Fitzgerald v. United States Lines Co., supra, Mr. Justice Black said that: "Article III of the Constitution vested in the federal courts jurisdiction over admiralty and maritime cases, and, since that time, the Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law."[10] Nevertheless, when Congress has exercised its powers in the admiralty and maritime field, such as in the enactment of the Jones Act, that statute would seem controlling, whatever may be other developments of judge-made admiralty or maritime law. This conclusion would appear to follow since Congress has acted in a specific field; has provided a special remedy and no other; and has restricted recovery of damages to designated de-

9. Such a responsibility is, perhaps, not limitless. In Southern Pacific Co. v. Jensen, 244 U.S. 205, 221, 37 S.Ct. 524, 531, 61 L.Ed. 1086, Mr. Justice Holmes observed: "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions. A common-law judge could not say I think the doctrine of consideration a bit of historical nonsense and shall not enforce it in my court. No more could a judge exercising the limited jurisdiction of admiralty say I think well of the common-law rules of master and servant and propose to introduce them here *en bloc.*"

10. In the Fitzgerald case the court said that the Seventh Amendment did not require jury trials in admiralty cases, nor did that amendment nor any other provision of the Constitution forbid them; nor did any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases. The court held that a seaman was entitled to a jury trial on a maintenance and cure claim joined with a claim for Jones Act negligence when both arose out of the same facts. The proposition is now established, but the difficulties in arriving at such a determination are evidenced in the dissenting opinion of Mr. Justice Harlan, and the three differing opinions of the Court of Appeals of the Second Circuit, 306 F. 2d 461, whose decision was reversed.

pendent beneficiaries. Moreover, it is to be observed that in the Kernan case, it was held that liability for the death of the seaman depended entirely on the Jones Act; in The Tungus case, the decedent was not a seaman and had no rights under the Jones Act; and in the Fitzgerald case, the claim was, under the Jones Act, for damages resulting in injuries to a seaman. None of these cases was for indemnity for the death of a seaman, occasioned by unseaworthiness, under the general maritime law, or under a state Wrongful Death Act; and what is said in these cases can hardly be taken to mean that the heretofore settled law is to be overruled, and that a personal representative has a right of action for indemnity for the death of a seaman occasioned by an unseaworthy vessel, under the maritime law, and also under a state Wrongful Death Act, as well as under the Jones Act.

In the Jones Act, Congress gave a federal right of action to the personal representative of a seaman whose death resulted from negligence, for the benefit of specified dependents. No such right had previously existed. Congress having, by the Jones Act, pre-empted the field relating to recovery of damages for the death of a seaman, that statute must be deemed to supersede all state legislation bearing on the subject and to be the exclusive remedy in such a case.

It is to be noted that all of the allegations of the complaint upon which plaintiff bases her claim for indemnity constitute assertions of negligence. As plaintiff, in her complaint, states: "As a proximate result of the negligence of the defendant as described in detail below, decedent lost his life by drowning." Whether the negligence was failure to provide safe access to the ship for plaintiff's decedent, or whether the negligence was a breach of defendant's duty to provide a seaworthy ship, the action is based upon negligence and proximate cause, and, on the proof thereof, plaintiff would be entitled to a judgment. As personal representative of her decedent, plaintiff could maintain the suit and recover under the Jones Act. The only difference between a recovery under the Jones Act and a recovery under the maritime law for unseaworthiness, or under the Ohio Wrongful Death Act, is that, under the Jones Act, the recovery is limited to certain designated dependent beneficiaries, as provided by that statute, and under the maritime law and the Ohio Wrongful Death Act, other persons, including dependents or non-dependents, would have rights of indemnity.

In accordance with the controlling adjudications and in the light of the circumstances disclosed in this case, the exclusive remedy for indemnity for the death of plaintiff's decedent is through an action brought by the personal representative under the Jones Act. Because of such exclusive remedy, petitioners in Case No. 15,389 have no right of action under the general maritime law for unseaworthiness or under the Ohio Wrongful Death Act. Having no such rights, the hardship rule applicable to interlocutory orders, resulting in their being considered as appealable orders, would not, in any event, be relevant.

Under the foregoing circumstances, the need for the issuance of a writ of mandamus, injunction, or granting of a petition for other extraordinary remedy, under given appropriate circumstances, disappears. As heretofore said, ordinarily, we would not have reached the merits of this controversy except after a hearing of the appeal. However, because of petitioners' prayer for extraordinary relief, we have duly examined all the related questions, and also because of plaintiff's and petitioners' request and consent, we have considered and determined the controversy on the merits as though it were submitted on an appeal; and our determination is not prejudicial to appellee and respondent, who have not so consented. It is our conclusion that an order be entered in Case No. 15,389 denying the petition for a writ of mandamus, injunction, or other extraordinary relief; that an order be entered in Case No. 15,383 denying the motion to dismiss the appeal; and that the order of the

District Court, striking from appellant's complaint the allegations relating to the general maritime law doctrine of unseaworthiness, and the allegations relating to the Ohio Wrongful Death Act, be affirmed.