**T. J. STEVENSON & CO., Inc.**

*v.*

**GEORGE W. WHITEMAN TOW-ING, INC.**

**Civ. A. No. 68–110.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Dec. 22, 1970.

Andrew T. Martinez, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for plaintiff.

L. J. Lautenschlaeger, Jr., Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for defendant.

HEEBE, District Judge.

This is an action by T. J. Stevenson & Company, Inc. (hereafter Stevenson) owner of the SS JOHN F. SHEA, against George W. Whiteman Towing Company, Inc. (hereafter Whiteman), owner of the Tug WHITEMAN NO. 9, to recover indemnity for an alleged breach of the defendant's warranty of workmanlike performance. Stevenson claims indemnity in the amount of $7,-703.38 for settlement funds, maintenance and cure payments and attorneys' fees it incurred in connection with a claim for personal injury sustained by Julio V. Martinez, a crewmember of the JOHN F. SHEA. The injury resulted when a heaving line, used to heave up towing cables from the Tug WHITEMAN NO. 9 parted as a result of allegedly being defective. The issues presented are whether Whiteman owed a warranty of workmanlike performance to Stevenson; if so, whether it breached this obligation so as to be liable for all or any part of the amount claimed; and whether the doctrine of laches can be applied to deny plaintiff's claim in any event.

The case came on for trial without a jury on a previous day, and the Court, having heard the arguments of counsel, having conferred with counsel prior to trial regarding the legal issues, and having duly considered all of the evidence,

is now fully advised in the premises and makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. T. J. Stevenson & Company, Inc., a foreign corporation, at all times mentioned herein was owner and operator of the SS JOHN F. SHEA, a cargo vessel engaged in the foreign commerce of the United States. On October 5, 1966, the vessel was afloat in the Mississippi River in the City of New Orleans, within the maritime and admiralty jurisdiction of the United States District Court for the Eastern District of Louisiana, New Orleans Division.

2. George W. Whiteman Towing, Inc., a Louisiana corporation, at all times mentioned herein was engaged in the business for profit of harbor towing in and around the Port of New Orleans and in connection therewith owned and operated four vessels including the tug WHITEMAN NO. 9.

3. On October 5, 1966, Julio V. Martinez was serving as a crewmember on the SS JOHN F. SHEA in the capacity of able-bodied seaman.

4. On the night of October 5, 1966, the SS JOHN F. SHEA arrived at the Port of New Orleans. Pursuant to a contract of hire between the parties, the manned and equipped WHITEMAN NO. 9 was sent by Whiteman to the SS JOHN F. SHEA to assist that vessel in docking at the Orange Street wharf in that City.

5. In order to perform the service for which she was deployed, the tug WHITEMAN NO. 9 was to make fast along the port bow and side of the SS JOHN F. SHEA by use of lines and cables provided by the tug.

6. When the tug WHITEMAN NO. 9 was positioned along the port side of the SS JOHN F. SHEA, the crew of the tug threw a 9-thread manila heaving line up to the open deck of the SS JOHN F. SHEA, which was about 20 feet above the deck of the tug WHITEMAN NO. 9. One end of the line was weighted to facilitate heaving, and the after end was tied to the tug's one to one and three-quarter inch wire towing cable.

7. The weighted end of the heaving line was received on the deck of the SS JOHN F. SHEA by one of that ship's crewmembers and passed by him through a chock located in the gunwale.

8. The chock, a metal fitting used for the lead of lines or cables through the gunwale to the bits on the deck some six feet away, formed an oval opening measuring about 18″ x 24″ with a smooth rounded inside surface. The chock was in good condition and fit for its intended use.

9. After the heaving line from the tug had been put through the chock and the slack had been taken up by one of the JOHN F. SHEA's crew, two or three crewmembers of the JOHN F. SHEA, standing one behind the other in a line, the last or most inboard one of whom was Julio Martinez, began pulling the heaving line aboard, hand over hand.

10. As the men pulled in on the heaving line, the tug's wire towing cable was raised from the deck of the tug toward the chock and the weight of the heaving line steadily increased as additional cable was lifted into the air.

11. When the end of the towing cable was well into the air, but before it reached the chock on the SS JOHN F. SHEA, the heaving line broke, causing Martinez, who was pulling on the line with both hands against the weight of the towing cable, to fall to the deck of the ship, striking his hand and his head.

12. The procedures being followed by the JOHN F. SHEA crewmembers were proper. There were no obstructions on the JOHN F. SHEA to snag or impede the line's progress as it was brought aboard. The heaving line broke only because it was defective and not fit for its intended use.

13. Martinez examined the broken end of the line immediately after the accident and found it frayed and rotted. All witnesses agree that a 9-thread ma-

nila line in good condition could not have been broken by the overhand pulling of two or three men. The Captain of the WHITEMAN NO. 9 at the time, and another tug Captain employed by Whiteman, testified that heaving lines are customarily tested for condition onboard Whiteman's boats by "putting a strain"· on them; and that if a line breaks under the strain, it is then known to be unfit for further use. The Whiteman witnesses also testified that the breaking of heaving lines from use and rot cannot be determined by visual inspection; that it was Whiteman's practice to use the heaving lines until they were lost, cut, or broken, and that any line observed to have a cut which would impair its strength was, after such observation, removed from service.

14. There was no opportunity for those onboard the SS JOHN F. SHEA to examine or test the manila heaving line before the crew began to put a strain on it. The deck area where the work was being performed had sufficient illumination for the job at hand, but as the vessel was navigating, the deck lights were off so as not to impair the vision of those on the bridge navigating the vessel. Further, as the tug's heaving line was tied to the towing cable, those onboard the JOHN F. SHEA could have examined the line only after it and the cable had been brought onboard at the end of the operation.

15. The defendant, in brief and argument, has suggested that the chock of the JOHN F. SHEA might have been defective and cut the heaving line as it was pulled through, but there is no evidence to support this contention. Rather, the only evidence is that the heaving line was defective and broke under normal use. Martinez and another seaman pulling on the line at the time testified in this case and neither indicated that the line broke because of any problem with the chock. Further, there was evidence that the chock in question, although used regularly in the same manner and for the same purpose as on the night in question, had never, before or

since, to the knowledge of the witnesses, including Whiteman witnesses who regularly assisted the JOHN F. SHEA during her calls at New Orleans, caused a heaving line or any line to be cut or to break.

16. The sole proximate cause of the accident and injury to Martinez was the breaking of the defective heaving line. The ·JOHN F. SHEA was seaworthy in all material respects except insofar as the defective heaving line from the tug WHITEMAN NO. 9 made her unseaworthy.

17. As a result of the accident, Julio V. Martinez sustained injuries to his head and hand which required treatment at the USPHS hospitals in New Orleans and New York. He was unfit for duty and under treatment as an outpatient from October 18, 1966, until March 15, 1967, and he testified to continued pain and discomfort thereafter. Stevenson, as employer at the time of the injury, paid Martinez $8.00 per day for a total of $1,200.00 in maintenance while he was under outpatient treatment. These payments were required to be made by Stevenson and were reasonable and proper. Further, Martinez sustained a loss of wages while disabled under treatment of $3,462.90.

18. Julio V. Martinez made claim against Stevenson for $50,000.00 damages on account of the personal injuries sustained, filing suit in the United States District Court for the Southern District of New York on or about December 1, 1966.

19. On July 17, 1967, Stevenson gave written notice of Martinez's claim to Whiteman, and of its intention to hold Whiteman responsible for any and all expense in connection therewith. Defense of the litigation in New York was formally tendered to Whiteman at a later date and this tender was declined by Whiteman.

20. Because Whiteman was not amenable to suit in New York, and as it had declined to take up the defense of the suit against Stevenson as tendered,

Stevenson, through its attorneys, defended the action alone and during its course obtained an offer in compromise of $6,000.00. The Court in New York, after hearing plaintiff's contentions and defendant's contentions, found the Martinez settlement offer to be reasonable and proper. Stevenson accepted it and obtained a release in exchange for the $6,000.00 settlement payment. After a review of the evidence pertaining to the accident and injuries, including Martinez's testimony, the hospital records, the wage loss and extent of injury with attendant pain and suffering alleged, this Court also finds that the amount paid by Stevenson to Martinez in settlement of the damage claim to be reasonable and proper.

21. Stevenson incurred and paid $503.38 in legal fees and expense in connection with the defense of the suit filed by Martinez against it in New York, an amount which the defendant agrees is reasonable for the services rendered, and one which the Court finds to be reasonable and proper under the circumstances.

22. Settlement with Martinez was consummated by Stevenson in New York on December 19, 1967, by payment of $6,-000.00, and on January 17, 1968, this action for indemnity was filed by Stevenson against Whiteman.

23. Whiteman asserts the doctrine of laches as a defense, contending that notice of the injury should have been given to the tug WHITEMAN NO. 9 by the Captain of the SS JOHN F. SHEA at the time the tug cast off from the ship after docking. At this time, however, it was not known by the Captain or other officers onboard that Martinez had been severely injured. Moreover, the crew of the WHITEMAN NO. 9 knew that the heaving line had broken when the wire fell back to the tug, and observed its condition when the towing wire was returned to the tug with what remained of the line at the conclusion of the operation. The facts do not support the plea of laches either as to delay or

prejudice. As to the latter, the evidence shows defendant had ample opportunity to investigate the matter and to take over defense of the action filed by Martinez after the notice of July 17, 1967, had it desired so to do but, instead, chose not even to interview the tug's crew until May or June of 1970, shortly in advance of the first trial date assigned to this case by the Court.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this matter and venue is properly laid herein in the United States District Court for the Eastern District of Louisiana, New Orleans Division. 28 U.S.C. § 1333; 1 Barron & Holtzoff, Federal Practice and Procedure, § 78.1 (Wright ed., 1960).

2. Martinez, as a member of the crew of the SS JOHN F. SHEA, was owed the warranty of seaworthiness by Stevenson. This warranty included the absolute duty, regardless of negligence, to furnish equipment and material which was reasonably safe for its intended purpose. Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

3. A vessel can be rendered unseaworthy by equipment of others, Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Chagois v. Lykes Bros. Steamship Co., Inc., 432 F.2d 388 (5th Cir. 1970), and the defective manila heaving line provided by Whiteman rendered the JOHN F. SHEA unseaworthy and, hence, liable to Martinez for damages on account of the injuries sustained by him.

4. The unseaworthiness of the SS JOHN F. SHEA is not affected by the fact that the defect in the heaving line was still out from the vessel when the accident occurred, Gutierrez v. Waterman Steamship Corp., 373 U.S. 406 (1963), Chagois v. Lykes Bros. Steamship Co., Inc., *supra*; nor by the possibility that the defect was latent or discoverable only by strain or tension on the heaving line, Sieracki v. Seas Ship-

ping Co., 149 F.2d 98 (3rd Cir. 1945), aff'd 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

5. The amount paid by Stevenson to Martinez in settlement of the damage claim ($6,000.00), the expense and attorney's fees incurred and paid by Stevenson for defense of that claim ($503.-38), and the amounts paid in maintenance during the period of outpatient treatment while unfit for duty ($1,200.-00) were reasonable and proper and, as to maintenance, required as a matter of law.

6. The SS JOHN F. SHEA was unseaworthy; the unseaworthiness was caused by the defective heaving line provided by Whiteman, and this unseaworthy condition was the proximate cause of the injuries and disability sustained by Martinez.

7. Whiteman, as an independent towing contractor hired to assist the JOHN F. SHEA, owed to that ship and her owners the warranty of workmanlike performance required of stevedores, ship repairers, and others performing services for vessels in navigation. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Tebbs v. Baker-Whiteley Towing Co., 407 F.2d 1055 (4th Cir. 1969); United States v. Tug Manzanillo, 310 F.2d 220 (9th Cir. 1962); James McWilliams Blue Line v. Esso Standard Oil Co., 245 F.2d 84 (2d Cir. 1957).

8. The warranty of workmanlike performance owed by Whiteman included the duty to furnish equipment which was fit for its intended use. This duty includes equipment in which the defect is latent, Italia Societa Per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), and was breached by Whiteman when providing the defective manila heaving line. Whiteman, therefore, breached its warranty of workmanlike performance, and in so doing caused the injuries claimed by Martinez.

9. The breach of warranty of workmanlike performance by Whiteman makes it liable to Stevenson for the amounts paid to Martinez in settlement of the damage claim and for maintenance, and also for the attorney's fees incurred and paid by Stevenson in defense of the action brought by Martinez against it. D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966); Lusich v. Bloomfield Steamship Co., 355 F.2d 770 (5th Cir. 1966), and cases cited at footnote 9 therein; Damanti v. A/S Inger, 314 F.2d 395 (2d Cir. 1963).

10. The defendant's plea of laches cannot be sustained and is denied as there was no delay by Stevenson in prosecuting its claim for indemnity or any prejudice to the defendant who, after notice, waited almost three years to interview its employee witnesses.

11. Plaintiff is entitled to judgment against Whiteman in the amount of $7,703.38 plus costs. Considering the record, the Court also allows interest at the rate of five per cent per annum from the date of judicial demand until the judgment is paid.

Let judgment be entered accordingly.