Regina BONCICH, Administratrix of the Estate of John Boncich, Deceased, Plaintiff,

v.

M. P. HOWLETT, INC. and American Chain & Cable Company, Inc., Defendants.

Complaint of M. P. HOWLETT, INC., Plaintiff, as owner of the BARGE M. P. HOWLETT # 19, in a cause of Exoneration from or Limitation of Liability.

BALTIC STEAMSHIP COMPANY, Plaintiff,

v.

INTERNATIONAL TERMINAL & OPERATING COMPANY, INC., and American Chain and Cable Company, Inc., Defendants.

Nos. 74 C 1837, 75 C 394 and 75 C 1039.

United States District Court, E. D. New York.

Oct. 26, 1976.

Corrected in Supplemental Mem. and Order Nov. 11, 1976.

Alexander, Ash, Schwartz & Cohen, New York City, for defendant Am. Chain & Cable.

Kreindler & Kreindler, New York City, for plaintiff Boncich; Paul Edelman, New York City, of counsel.

Macklin, Hanan & McKernan, Hyde, Dickerson & Reilly, New York City, for defendant Howlett; Charles Tomaselli, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City by Richard Licata, New York City, of counsel, for plaintiff Baltic.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for defendant and third party plaintiff I.T.O.; Robert E. Daley, New York City, of counsel.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

### PRELIMINARY STATEMENT

On March 5, 1974, the floating steel barge M. P. HOWLETT # 19 was engaged in loading and unloading cargo containers from the Soviet vessel m/v NOVOLVOVSK at a Brooklyn, New York pier. At about 5:30 P.M. a topping lift cable of the barge's crane parted and the boom fell to the deck of the barge. After the incident, two longshoremen, John Boncich and Frank Mignano, employees of the International Terminal and Operating Company, were found injured and the m/v NOVOLVOVSK sustained damage to its hull. John Boncich subsequently died from his injuries.

To date, this occurrence has spawned a total of six actions which are now pending before this court:

*74 C 1837.* By Regina Boncich, as administratrix of the estate of John Boncich, for wrongful death and conscious pain and suffering against M. P. Howlett, Inc., (Howlett) the barge owner, in negligence; and against American Chain and Cable Company, the purported manufacturer and seller of the allegedly defective crane cable, for negligence, breach of warranty, and strict tort liability.

*75 C 394.* By Howlett, for exoneration and limitation of liability pursuant to 46 U.S.C. §§ 182–88.

*75 C 1039.* By Baltic Steamship Company, the owner of the m/v NOVOLVOVSK, for property damage against International Terminal and Operating Company, the stevedore, for negligence and breach of warranty of workmanlike service; and against American Chain and Cable for neg-

ligence, breach of warranty, and strict tort liability.

*75 C 1549.* By Baltic Steamship Company against Jones and Loughlin Steel Corp., as purported designer, manufacturer, assembler, inspector, and vendor of the allegedly defective cable, for negligence, breach of warranty, and strict tort liability.

*75 C 1550.* By Regina Boncich against Jones and Loughlin Steel Corp. for negligence, breach of warranty, and strict tort liability.

*76 C 310.* By Frank Mignano, the other injured longshoreman, against Howlett, for personal injuries in negligence. (Proceedings against original codefendant American Chain and Cable were discontinued by Mignano without prejudice.)

By the instant motion, Regina Boncich seeks to amend her complaint in the negligence action against Howlett, (74 C 1837) and her claim and answer in the exoneration/limitation proceeding (75 C 394) to include a claim in strict tort liability against Howlett. In addition, the motion seeks to consolidate both these actions with the Baltic Steamship action for property damage (75 C 1039). For the reasons discussed below, both motions are in all respects denied.

### STRICT TORT LIABILITY CLAIM

 Regina Boncich's claims against Howlett, for wrongful death and pain and suffering are governed by the Longshoremen's and Harbor Workers' Compensation Act (LAHWCA), 33 U.S.C. §§ 901–50. Of particular importance is § 905 of the LAHWCA which provides:

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive * * * on account of such injury or death.

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such

damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based [on] the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

Specifically, the question to be answered is whether § 905 bars this attempt by Regina Boncich to assert an independent basis of recovery in strict tort liability in addition to her negligence claim against the vessel owner.

Prior to 1972, a longshoreman could sue the owner of a vessel on which he was working or by which he was employed for breach of the warranty of seaworthiness of the vessel. In 1972, however, Congress eliminated all unseaworthiness claims by longshoremen and limited a longshoreman's recovery to compensation under the LAHWCA and, when applicable, to a claim against the vessel owner for negligence. 33 U.S.C. §§ 904–05, 933. Nonetheless, in *Streatch v. Associated Container Transportation, Ltd.,* 388 F.Supp. 935 (C.D.Cal.1975), the district court interpreted the phrase "exclusive of all other remedies against the vessel" in § 905 to apply only to all other *maritime* remedies, and despite the inclusiveness of the words "all other remedies" permitted the imposition of a strict tort liability claim. This court finds *Streatch* unpersuasive in the instant case.

First, as the legislative history of the 1972 amendments indicates, "[p]ersons to

whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness." House Report No. 92–1441, 92d Congress, 2d Session (1972), U.S.Code Cong. & Admin.News 1972, pp. 4698, 4703. Significantly, the amendments specifically eliminated an unseaworthiness claim against the vessel owner resulting from defective gear or equipment of stevedores. *Id.* Moreover, among the conditions which might render a vessel unseaworthy, and thereby impose liability on a vessel owner, were defective gear and appurtenances. *See, e. g., Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971); *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944) (defective rope); *Avena v. Clauss & Co.,* 504 F.2d 469 (C.A.2 1974) (defective loading strap); *T. J. Stevenson & Co. v. George W. Whiteman Towing, Inc.,* 331 F.Supp. 1038 (D.La.1970) (defective heaving line).

Since the allegedly defective cable on the HOWLETT # 19 constituted gear, appliances, or appurtenances once covered by the seaworthiness doctrine, and the 1972 amendments expressly eliminated claims based on unseaworthiness, a claim based on the "defective" cable cannot be made cognizable under the LAHWCA merely because it is couched in terms of strict tort liability rather than unseaworthiness or nondelegable duty.

Second, the legislative history provides additional insight to the purpose of the LAHWCA and its exclusiveness of remedies provisions.

> Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition. House Report, *supra* at 4704.

In *Ianuzzi v. South African Marine Corp.,* 510 F.2d 950 (C.A.2 1975), the Second Circuit followed this reasoning and, treating the issue of a defective winch as a negligence claim, found that "[n]otice of the particular defect causing the accident is necessary if a shipowner is to be held liable in negligence for failing to take defective equipment off the line." *Id.* at 955; *accord, Rice v. Atlantic Gulf & Pacific Co.,* 484 F.2d 1318, 1320 (C.A.2 1973). Moreover, "[h]aving abolished the doctrine of unseaworthiness as a basis of liability, Congress did not intend that a concept of negligence approximating no-fault liability should take its place." *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505, at 507 (C.A.2 1976). *See Bess v. Agromar Line,* 518 F.2d 738, 741 (C.A.4 1975). To permit a claim for strict tort liability within the context of the LAHWCA would add nothing to the legislative intent of promoting a vessel owner's responsibility; rather, it would permit recovery on the "no-fault" basis denounced by the Second Circuit. In fact, even the legislative history to the 1972 amendments notes that "[t]he Committee also rejected the thesis that a vessel should be liable without regard to its fault * * *" House Report No. 92–1441, *supra* at 4702.

Finally, the conclusion reached in *Streatch v. Associated Container Transportation, Ltd., supra,* apparently the only decision to date which has permitted a claim of strict tort liability under the LAHWCA, is not dispositive of the instant case. Assuming *arguendo* that the LAHWCA recognizes such a claim, the *Streatch* court also remarked:

> [I]t is necessary to construe the words "exclusive of all other remedies" to apply only to remedies against the vesselowner *qua* vesselowner. Other causes of action which the longshoreman might have against the vesselowner based on other theories, which causes of action he would have if similarly injured in non-maritime employment ashore, are not affected * * *. [T]o be suable on a strict liability claim, a defendant must be in the

business of distributing the allegedly defective product to the public. If a vessel-owner is in that business, the cause of action arises against him not *qua* vessel owner but *qua* provider of a defective product. 388 F.Supp. at 940.

However, the *Streatch* court continues, "not all * * * persons are subject to strict liability in tort. The twin requirements * * * are * * * that the defendant must be in the *business* of providing the product and that he must provide the product *to the public for use by the public.*" *Streatch v. Associated Container Transportation, Ltd., supra* at 942 (emphasis in original).

In *Streatch,* the defendant vessel owner had supplied a vehicle maintained and controlled by the vessel owner to the stevedoring company for use by longshoremen in unloading cargo. The vehicle was provided to the stevedoring company "for consideration", which was in the form of a rebate or a reduction from the usual rate for stevedoring services. *Id.* at 937. After holding that a strict tort liability claim was cognizable under the LAHWCA, the *Streatch* court limited its findings as follows:

> At first glance, it appears that this vehicle is not intended for any "public" use at all. The vesselowner apparently intends it [the vehicle] to be used on the vessel by a presumptively knowledgeable and strictly limited class of user. Again, however, the Court does not feel free to grant a motion to dismiss [the strict liability claim] without full development of all the facts and will undoubtedly have a further opportunity to consider the same question at or before the trial after the facts are fully known. *Id.* at 943.

Unlike *Streatch* this case does not require a further opportunity to consider the same question, for, as correctly argued in Howlett's Memorandum of Law at p. 5:

> Howlett did not provide the product to the public for use by the public. Howlett itself was a user of the product when the accident occurred. The doctrine of strict liability in tort should not be extended to

include a vessel owner (floating crane) which itself is using the allegedly defective product [cable] which was supplied by another.

Howlett was neither a manufacturer, distributor, bailor, nor lessor engaged in putting an allegedly defective *product* into the stream of commerce. *See, e. g., Price v. Shell Oil Co.,* 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970); *Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (1972). Rather, Howlett was a consumer of an allegedly defective product, the cable, used as a component on its floating crane.

■ Nothing herein should be construed as precluding a claim of strict tort liability in admiralty under the proper circumstances and against the proper parties. Strict tort liability is cognizable in admiralty, *see, e. g., Schaeffer v. Michigan-Ohio Navigation Co.,* 416 F.2d 217 (C.A.6 1969); *Delaney v. Townmotor Corp.,* 339 F.2d 4 (C.A.2 1964); and *Sears, Roebuck & Co. v. American President Lines, Ltd.,* 345 F.Supp. 395 (N.D.Cal.1971), and such claims have already been asserted in some of the present actions against American Cable and Jones & Loughlin. Rather, Regina Boncich's motion to amend her complaint and her claim in the exoneration/limitation proceeding to assert a cause of action in strict tort liability under the LAHWCA would require an unwarranted extension not only of the exclusiveness of remedies provision of § 905 but also of the theory of strict tort liability itself. Such extensions, on the facts of this case, cannot be permitted.

MOTION TO CONSOLIDATE

■ Regina Boncich has also moved to consolidate her action against Howlett and American Chain and Cable (74 C 1837) with the pending exoneration/limitation proceeding (75 C 394) and Baltic Steamship's action for property damage (75 C 1039) pursuant to FRCP 42(a). However, when we look to the nature of the exoneration/limitation proceeding as discussed in *In re Atlass' Petition,* 350 F.2d 592 (C.A.7

1965), we see that consolidation should not be granted at this time.

The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited. If no liability exists there is nothing to limit. And in a proceeding to limit liability two duties are imposed upon the court. The first is to ascertain whether any liability exists. If it is found to exist the second duty arises, which is to ascertain whether the loss or damage was occasioned or incurred without the "privity or knowledge" of the owner of the ship. If no liability is found to exist, the absence of all liability is to be decreed, and there the matter ends. (350 F.2d at 593 *quoting* The 84–H, 296 F. 427, 431 C.A.2)

Boncich's application is, therefore, premature. Should the admiralty judge find liability, but no privity, or both liability and privity, consolidation might then be appropriate to effect a final disposition of all six cases which are currently pending before this court. Nonetheless, at the present time, there is no reason to believe that consolidation would expedite any pre-trial matters, and on the other hand, consolidation might well delay and complicate disposition of the exoneration/limitation proceeding.

Accordingly, the motion to consolidate is denied without prejudice to renewal after final determination of the exoneration/limitation proceeding. The motion to amend Regina Boncich's complaint in 74 C 1837 and her claim in 75 C 394 is denied.

SO ORDERED.